**Deborah Ann BLACKWELL, Plaintiff,**

v.

**Michael D. COOK, Judge of the Circuit Court of Marshall County, Indiana, Defendant.**

**Civ. No. S82–500.**

United States District Court, N.D. Indiana, South Bend Division.

Aug. 23, 1983.

As Amended Sept. 8, 1983.

Thomas M. Joyce, Chicago, Ill., Robert Canfield, South Bend, Ind., for plaintiff.

Linley Pearson, Atty. Gen. by Michael Schaefer, Deputy Atty. Gen., Indianapolis, Ind., for defendant.

## MEMORANDUM AND ORDER

SHARP, Chief Judge.

This case was filed pursuant to 42 U.S.C. § 1983 by a former employee of the Probation Department of Marshall County, Indiana, against her putative employer/supervisor, the Judge of the Marshall Circuit Court. The jurisdiction of this court is predicated on a federal question under 28 U.S.C. §§ 1331 and 1343. In addition to damages, plaintiff seeks declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202. This matter is presently before the court on defendant's motion for summary judgment.

Plaintiff filed her complaint in this action on November 2, 1982. In said complaint, plaintiff alleged that the defendant's act of terminating her employment as a family counselor in the Marshall County Probation Department constituted a violation of plaintiff's equal protection and due process rights under the Fourteenth Amendment, as well as a violation of her First Amendment rights.[1]

On January 26, 1983, defendant filed a motion for summary judgment. In that motion, defendant set forth four grounds in support of a summary ruling in this matter: (1) defendant acted in his official capacity as a judge, and is therefore shielded by the doctrine of judicial immunity; (2) plaintiff's employment was at will, i.e., she lacked any expectation under state law in her continued employment and, therefore, no legitimate property interest existed in said employment; (3) plaintiff failed to state a cognizable claim on her First Amendment count; and, (4) plaintiff was properly discharged for cause. The plaintiff filed no response to the defendant's motion for summary judgment, and on March 3, 1983, the defendant filed a motion for summary ruling on its motion for summary judgment, based on plaintiff's failure to comply with the responsive pleading guidelines of Rule 7(b) of the Rules of the United States District Court for the Northern District of Indiana.

On March 11, 1983, a hearing was held in open court on the defendant's motion for summary judgment. At that time, the plaintiff was given to and including July 1, 1983, in which to file a response to defendant's original motion. To date, plaintiff has not responded to defendant's motion.

On the date of the pretrial conference (March 11, 1983), defendant filed a supplemental memorandum in support of its motion for summary judgment, and on June 30, 1983, defendant filed a Consolidated Motion for Summary Judgment.

On July 12, 1983, plaintiff filed a motion for enlargement of time in which to respond to defendant's motions for summary judgment.[2] That motion was granted, giv-

---

1. The basis for this particular claim is unclear from the pleadings. It appears that the plaintiff is contending that one of the reasons for her discharge is a conversation she had with her husband in the privacy of her home, the contents of which were somehow later disclosed to the defendant. As such, the claim would be essentially one for a denial of the right of free speech.

2. Plaintiff refers to the defendant's motions for summary judgment as a "motion to dismiss." Aside from this incorrect denomination of the Rule 56 motions as one arising under F.R.Civ.P. 12, plaintiff's Chicago counsel asserts in this motion that he was never served with copies of defendant's motions. This claim is meritless and does not excuse the dilatory conduct exhibited by said counsel. All of defendant's pleadings contain a Certificate of Service showing that copies were sent both to plaintiff's lead (Chicago) counsel and to her local counsel. Further, Rule 1(d) of the Rules of the United States District Court for the Northern District of Indiana explicitly states, "Service of notice

ing plaintiff to and including July 29, 1983, in which to file said response. As already indicated, plaintiff has yet to file any such response.[3]

Defendant's motion for summary judgment is ripe for ruling. It is the ORDER of this court that the plaintiff's deposition, filed June 15, 1983, be and hereby is published and made a part of the record hereof. This court turns now to an examination of the merits of defendant's motion.

## I

Although not immunizing him from injunctive and declaratory relief, the Civil Rights Act did leave intact a state court judge's absolute immunity from monetary damages for the performance of a judicial act. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The test to determine whether the doctrine of judicial immunity protects a judge from damages for a particular act is twofold; the leading case on this point states it as follows:

> ... [T]he factors determining whether an act by a judge is a "judicial" one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity. *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S.Ct. 1099, 1107, 55 L.Ed.2d 331 (1978).

To determine the "nature of the act itself," it is necessary to review the probation officer's duties and responsibilities contained in Ind.Code § 11–13–1–3 (Burns Ann.1981 Rpl.) The statute provides:

Sec. 3 A probation officer shall:

(1) *conduct prehearing and presentence investigations* and prepare reports as required by law;

(2) *assist the courts* in making pretrial release decisions;

(3) *assist the courts,* prosecuting attorneys, and other law enforcement officials *in making decisions* regarding the diversion of charged individuals to appropriate non-criminal alternatives;

(4) furnish each person placed on probation under his supervision a written statement of the conditions of his probation and *instruct him regarding those conditions;*

(5) *supervise* and assist persons on probation consistent with conditions of probation imposed by the court;

(6) *bring to the court's attention* any modification in the conditions of probation considered advisable;

(7) notify the court when a violation of a condition of probation occurs;

(8) cooperate with public and private agencies and other persons concerned with the treatment or welfare of persons on probation, and assist them in obtaining services from those agencies and persons;

(9) keep accurate records of cases investigated by him and of all cases assigned to him by the court and make these records available to the court upon request;

(10) collect and disburse money from persons under his supervision according to the order of the court, and keep accurate and complete accounts of those collections and disbursements;

(11) *assist the court in transferring supervision* of a person on probation to a court in another jurisdiction; and

(12) *perform other duties* required by law *as directed by the court.* (Emphasis added).

upon such attorney [i.e., local counsel] shall constitute service upon all other counsel appearing of record for such party." Finally, this court notes that plaintiff's lead counsel was granted the extension of time requested, and defendant, in his Response to Plaintiff's Motion for Enlargement of Time filed July 14, 1983, declared "the undersigned counsel has mailed another copy of Defendant's Motion for Summary Judgment to Mr. Joyce's new address this

date." Nonetheless, no response has yet been filed.

**3.** A careful examination of the file discloses that, with the exception of plaintiff's July 12, 1983 motion for additional time to respond, plaintiff has filed nothing in this case since its inception more than nine months ago.

As the above statutory language makes clear, the duties of the probation officer are essentially and inextricably bound up with those of the court itself. Thus, it would be difficult to conceive of a probation officer serving any purpose whatsoever in the absence of a court of law to which that probation officer would report.

It is uncontroverted that Mrs. Blackwell was a member of the Probation Department when her services were terminated. Mrs. Blackwell, as well as the other members of the Probation Department, were appointed to their positions by the Judge on January 5, 1982.

Mrs. Blackwell's description of her duties in her deposition as "family counsellor" within the probation department indicate that her functions were, in fact, those of a probation officer, or at least those of a "confidential" employee. Mrs. Blackwell's duties related to a juvenile diversion program which was designed to divert juveniles from formal judicial proceedings. Referrals came to Mrs. Blackwell in various ways. They could be directly from the police; the Court also made referrals directly. There was no difference in treatment of the juveniles whether they came to her directly from Court or other sources. As can be seen from the juvenile diversion program described by Mrs. Blackwell, she played a major role in the juvenile justice system which is under the Circuit Court. At a minimum her responsibilities are included under Ind.Code § 11–13–1–3(3) (Burns Ann.) when she became involved in the diversion of people to non-criminal alternatives.

It is the performance of these duties that have gained probation officials themselves the same immunity accorded to judges and other court officials. See, e.g., *Burkes v. Callion,* 433 F.2d 318 (9th Cir.1970), *cert. denied,* 403 U.S. 908, 91 S.Ct. 2217, 29 L.Ed.2d 685 (1971); *Briscoe v. Lahue,* 663 F.2d 713 (7th Cir.1981), *aff'd,* —— U.S.

——, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) (Court Reporter). These duties are essential to the administration of justice; the same considerations that extend to the personal acts of a judge also extend to the staff through which his judgments and policies are implemented. As stated in *Bradley v. Fisher,* 80 U.S. (13 Wall) 335, 20 L.Ed. 646 (1871).

> [I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. *Ibid.,* at 347, 20 L.Ed. 646.

The nature of these statutory duties placed on the probation officer indicates that the officer occupies a confidential relationship with the judge. That is precisely the conclusion reached in *Pruitt v. Kimbrough,* 536 F.Supp. 764, 767 (N.D.Ind.1982), *aff'd,* 705 F.2d 462 (7th Cir.1983).[4]

The nature of the judge-probation officer relationship, as seen in Ind.Code § 11–13–1–1 et seq., shows that it is essential to the decision-making process. Although there is a supervisory aspect to this relationship, it does not in any way minimize the judicial character of the roles both individuals perform. The existence of a supervisory function does not detract from the essentials or objectives of the relationship. The same consideration would be present in the relationship between a clerk and a court. See, e.g., *Rheuark v. Shaw,* 628 F.2d 297 (5th Cir.1980) *cert. denied,* 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981) (a judge's supervision of a court clerk is a judicial function).

Applying the above to the two considerations set forth by the Supreme Court in *Sparkman, supra,* reveals the following.

---

4. It should be noted at this point that the *Pruitt* decision held that a probation officer could not successfully sue the judge *qua* employer for damages under 42 U.S.C. § 1983 for allegedly unlawful discharge. 536 F.Supp. at 765, citing to the Seventh Circuit's unpublished opinion in the same case affirming in part and reversing in part the earlier district court decision. 665 F.2d 1049.

"The nature of the act" half of the *Sparkman* test is not dependent of whether the complained of act took place outside the courtroom. Relying on *Sparkman*, the Seventh Circuit rejected a "place of the act" test saying,

> ... [T]hat a judge has no jurisdiction outside a courtroom is without merit. Valid judicial acts are often performed outside the courtroom. *Lopez v. Vanderwater*, 620 F.2d 1229, 1234 (7th Cir.), cert. denied, 449 U.S. 1028, 101 S.Ct. 601, 66 L.Ed.2d 491 (1980).

The *Lopez* opinion noted that such essential judicial acts as ordered preparation would otherwise not be protected by the doctrine of judicial immunity if a "place-of-the-act" or "outside-the-courtroom" test were to be adopted.

Supervisory duties of the judge over persons involved in the judicial process do not defeat the other half of the *Sparkman* test, i.e., "did the person deal with the judge in his judicial capacity?" This is not a situation where the plaintiff was involved in an automobile collision with the defendant and the defendant is seeking to assert judicial immunity. Nor is it a situation where the judge is acting solely as an employer, e.g., hiring and firing a personal valet. Instead, as the court noted in *Pruitt, supra*, a special, confidential relationship exists between a probation officer and judge. In the realm of criminal law, their respective roles are intertwined and, as noted above, the position of probation officer would be incongruous in the absence of a judiciary.

■ Thus, the critical point here is the relationship between probation officer and judge. If, for example, a judge were to be empowered by statute to hire and fire *all* courthouse employees, it could not be seriously maintained that the decision to terminate the employment of the courthouse janitor would be cloaked with judicial immunity. The reason would be the absence of a special confidential relationship between the two roles. While the judge and janitor might *personally* enjoy a close friendship dating back to childhood, that personal relationship would be distinguishable from their *occupational* relationship. Or, in the language of the court in *Doe v. County of Lake, Indiana*, 399 F.Supp. 553 (N.D.Ind. 1975),

> Determination of these issues and implementation of any required remedies will in no way impair, interfere, or otherwise affect the discretion required by these defendants in making case-by-case decisions on the merits of individual juvenile situations. *Ibid.*, 399 F.Supp. at 557–8.

The same cannot be said of the effect the proposed relief in this case would have on the operation of the Marshall Circuit Court. The plaintiff is closely allied with the exercise of the Circuit Court's discretion in the handling of individual cases. Mrs. Blackwell has dealt with the Circuit Court in its capacity as a judge and has aided it in the performance of judicial acts. As a result, her prayer for damages growing out of those acts and relationships has no support in light of the doctrine of judicial immunity under 42 U.S.C. § 1983.[5]

## II

Mrs. Blackwell also claims that her due process rights to a termination hearing were violated by the manner of her dismissal. (Complaint, Count I, par. IX, X). This issue can be resolved against Mrs. Blackwell solely on her version of the facts alleged in the complaint.

■ In order to possess a due process right, a party must establish a property right that is affected by the challenged action. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). These leading cases stand as the authority for the now common place legal maxim that no one has

---

**5.** But see *Gabe v. County of Clark*, 701 F.2d 102 (9th Cir.1983) (judge's termination of his secretary's job without notice and hearing stated a cognizable claim under § 1983 against the county which had *changed* her legal status to one of employment at will *during the course of her employment*).

a right to continued public employment. *See also, Connealy v. Walsh,* 412 F.Supp. 146 (W.D.Mo.1976). *Perry* and *Roth* establish the test to determine whether an individual has acquired a property interest and right to hearing. The test has three parts: 1) the right may be established by a contract or by statute; 2) it may result from de facto tenure; 3) it may be established from an implied promise not to dismiss without notice and hearing. *Perry, supra,* 408 U.S. at 601, 92 S.Ct. at 2699; *Roth, supra,* 408 U.S. at 577–8, 92 S.Ct. at 2709.

■ As a matter of law, Mrs. Blackwell had no expectation of continued employment, no de facto tenure and could not have received an implied promise to dismiss without notice· and hearing because of a statutory elimination of any such options. Ind. Code § 11–13–1–1(c) (Burns Ann.1981 Repl.) directly provides:

> Probation officers shall serve at the pleasure of the appointing court and are directly responsible to and subject to the order of the court.

No other rights to hearing, expectation of a hearing, or *de facto* tenure have any validity in light of the clear and direct statutory elimination of such expectations or interest. Nor could Mrs. Blackwell point to any concrete examples of cases where such pre-termination hearings were conducted in the Probation Department or in county government. She had no expectation or interest in one for herself.

Furthermore, had such a custom existed for a pre-dismissal hearing in Marshall County government it is of no avail to Plaintiff for the reason that, under Indiana law, the members of the Marshall County judiciary are not county officials. The judges are officers of the state judicial system. *Pruitt v. Kimbrough, supra; State ex rel. McClure v. Marion Superior Court,* 239 Ind. 472, 158 N.E.2d 264 (1959); *State ex rel. Gibson v. Friedley,* 135 Ind. 119, 34 N.E. 872 (1893); and *State ex rel. Pitman v. Tucker,* (1874) 46 Ind. 355. These courts are exclusively units of the judicial branch of the state's constitutional system. *State ex rel. McClure v. Marion Superior Court,*

*supra; State ex rel. Gleason v. Gerdink,* (1909), 173 Ind. 245, 90 N.E. 70. As a result, any customary hearing practice in county government does not establish a right to similar treatment for Mrs. Blackwell, especially where statute specifies that service as a probation officer is "at the pleasure of the appointing court." Ind. Code § 11–13–1–1(c) (Burns Ann.1981 Repl.). Thus, Mrs. Blackwell's claim to a due process hearing on dismissal is without merit.

### III

The plaintiff also alleges that her dismissal was for the exercise of her right of free speech under the First Amendment, stemming from a personal conversation she had had with her husband. The basis for this allegation is, to say the least, unclear.

■ While public employees do not have an unqualified right to free speech on any and all topics, they do not surrender their first amendment rights. *Pickering v. Bd. of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). All public employees, however, are not alike. Some are such that they may be dismissed even for partisan political reasons, where they perform confidential or policy-making functions. *Cf. Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1975); *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Pruitt v. Kimbrough, supra.* (Mrs. Blackwell does not allege a patronage dismissal took place here). ·However, it has been recognized that:

> ... in determining whether a particular communication is protected, the bona fide interest of the state, as employer, in the efficient provision of services must be balanced against the interest of the employee in the expression and the interest of the public in hearing the communication. *Bowen v. Watkins,* 669 F.2d 979 (5th Cir.1982). *See also, Pickering v. Bd. of Education,* 391 U.S. at 568, 88 S.Ct. at 1734.

The above excerpt should be interpreted as a contraction on a right to unlimited free

speech. As shown above, a probation officer performs a confidential role in the Circuit Court. This confidence is of the same order as that between a judge and a research clerk. In neither instance can the judge permit any independence of action that is inimical to the function of the court or the image of the court in the eyes of the public.

The necessary elements of maintaining a successful cause of action on a retaliation-for-free-speech theory are two: the conduct must be protected and the dismissal must be causally linked to the adverse action. *Mt. Healthy City Bd. of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). In such cases, a shifting burden of proof has been established; if the employee satisfies the test, the employer may avoid liability by showing the firing would have taken place absent the constitutionally protected conduct. *Bowen, supra,* 669 F.2d at 983. Although there is some question whether Mrs. Blackwell's speech is constitutionally protected, there is nothing to indicate its necessary causal relationship with her dismissal. Moreover, her complaint is flawed because it failed to allege that she was satisfactorily performing her job. Such an allegation is necessary even in those cases where a patronage dismissal is alleged. *Cf. Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).

In *Connick v. Myers,* —— U.S. ——, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), decided during the pendency of this action, the Supreme Court held that a discharge of an assistant District Attorney did not violate the employee's constitutional rights of freedom of speech. Assuming for the sake of argument that Mrs. Blackwell's First Amendment claim is supported by any specific facts, as opposed to the conclusory and vague allegations of her complaint, her speech is not protected.

In her deposition, Mrs. Blackwell divulged that specific character of the speech which she claims was the reason for her dismissal. As noted above, the conversation was between her and her husband in their home. Mrs. Blackwell indicated that the conversation was a "domestic spat." Her deposition answer establishes that her conversation was a personal matter, not a conversation about a matter of public concern. Nor was the conversation as one of an employee.

In light of *Connick,* it appears that Mrs. Blackwell has failed to state a claim cognizable as a violation of the First Amendment. In ruling for the public employer against an employee who has circulated an office gripe questionnaire, the Supreme Court ruled:

> We hold only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior. *Cf. Bishop v. Wood,* 426 U.S. 341–350, 96 S.Ct. 2074, 2079–2080, 48 L.Ed.2d 684 (1976).

> \* \* \* \* \* \*

> Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.[6] In this case, with but one exception, the questions posed by Myers to her co-workers do not fall under the rubric of matters of "public concern."

*Connick, supra,* 103 S.Ct. at 1690.

(Footnote 6 to the above excerpt reminds the reader that the inquiry into the protected status of speech is one of law, not fact.)

There are no unusual circumstances present to cause this Court not to apply the *Connick* reasoning. Not only did the conversation not relate to the probation department (it was the *"usual"* domestic spat) it was so intensely personal that Mrs. Blackwell refused to elaborate on its content beyond the generality she used to describe it. Such a closely held conversation was hardly public, not on a public subject. As a

result, her first amendment claim must be deemed meritless.

Finally, the exhibits and the affidavit of the Defendant establish that Mrs. Blackwell was dismissed for cause. The March 18, 1982 letter from Judge Cook reveals that Mrs. Blackwell violated the June 16, 1981 order of the Circuit Court issued directly to the probation department. The reasons for the dismissal, assuming any had to be given at all due to the non-protected character of Mrs. Blackwell's conduct, establish the lack of any causal relationship between the conduct and the Defendant's adverse action.[6]

### CONCLUSION

For all of the foregoing reasons, the motion for summary judgment is hereby GRANTED in favor of the defendant and against the plaintiff. SO ORDERED.

---

**6.** It should again here be emphasized that the plaintiff has proffered no countervailing affidavits or exhibits as required under F.R.Civ.P. 56(e) to thwart defendant's motion under F.R. Civ.P. 56(c). Accordingly, defendant's arguments are uncontroverted.