**Harriett L. McMILLAN, Plaintiff-Appellee,**

v.

**Gerald SVETANOFF, Defendant-Appellant.**

No. 85–1544.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 6, 1985.

Decided June 10, 1986.

Arthur Thaddeus Perry, Office of Atty. Gen., Indianapolis, Ind., for defendant-appellant.

John O. Moss, Moss & Walton, Indianapolis, Ind., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, WOOD and CUDAHY, Circuit Judges.

CUMMINGS, Chief Judge.

The issue in this case is whether a judge's act in firing a court reporter is protected by judicial immunity. The plaintiff, Harriet McMillan, was employed as a court reporter for the Lake County Superior Court from February, 1973, to July 1, 1981. When the defendant, Gerald Svetanoff, was elected and took office as judge he dismissed the entire staff of his courtroom, including McMillan. One employee was rehired.

Indiana Code § 33–5–29.5–8 provides that court personnel serve at the pleasure of the senior judge of each division. In practice each judge employs the staff for his or her own courtroom subject to approval of the senior judge. Court reporters serve a particular judge, but are occasionally rotated through other chambers and also do work for private attorneys.

McMillan brought suit under 42 U.S.C. §§ 1981 and 1983, alleging violations of her civil rights. Specifically, she claimed she was discharged because of her race (black) and her political affiliation (Democrat). Judge Svetanoff filed a motion for summary judgment as to the damages claims, asserting absolute judicial immunity. The district court denied the motion without a statement of reasons. We affirm.

I

The sole question presented for review is whether the defendant should be shielded from personal liability for his termination of the plaintiff. It is well established that judges are immune from liability for their judicial acts, even when they act maliciously or corruptly. *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). The purpose of judicial immunity is to protect the public's interest in an independent judiciary. The doctrine of judicial immunity was initially developed in the context of adversarial proceedings where judges decide controversies between parties. *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1871). It has since been extended to any "judicial" act performed by a judge and even to other officials acting in a manner closely aligned with the judicial process. *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Moth-*

*er Goose Nursery Schools, Inc. v. Sendak,* 770 F.2d 668 (7th Cir.1985), certiorari denied, — U.S. —, 106 S.Ct. 884, 88 L.Ed.2d 919 (1986).

■ The rationale for a doctrine that excludes judges from liability for even intentional and malicious conduct while on the bench is that judges should be free to make controversial decisions and act upon their convictions without fear of personal liability. *Stump,* 435 U.S. at 364, 98 S.Ct. at 1108. It is the concern for principled and fearless decisionmaking that forms the basis for judicial immunity. *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967). But immunity is only granted when essential to protect the integrity of the judicial process. *Briscoe v. LaHue,* 460 U.S. 325, 334–335, 103 S.Ct. 1108, 1115, 1116, 75 L.Ed.2d 96 (1983).

■ Courts are hesitant and cautious in applying the judicial immunity doctrine to areas outside the traditional adversarial process, such as to quasi-judicial acts. See *Malley v. Briggs,* — U.S. —, 106 S.Ct. 1092, 1096–1098 (1986). In order for quasi-judicial officials to be granted absolute judicial immunity, their acts must reflect the essence of judicial decision-making and involve discretion of a judicial nature. See *id.,* 106 S.Ct. at 1097; *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Clark v. Washington,* 366 F.2d 678 (9th Cir.1966). Accordingly, only in the most extraordinary cases are executives shielded from damages liability. See *Cleavinger v. Saxner,* — U.S. —, 106 S.Ct. 496, 501, 88 L.Ed.2d 507 (1985) (citing favorably *Saxner v. Benson,* 727 F.2d at 669, 674 n. 2 (Cudahy, J., concurring)). We must be equally hesitant in applying the doctrine to judges acting outside the traditional dispute resolution function.

In *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, the Supreme Court set out a test for determining when judicial immunity applies. In that case the more traditional role of the judge was involved. Upon application of a mother, the judge signed an order permitting the sterilization of her 15-year old daughter without her knowl-

edge. Years later when the girl discovered that she had been sterilized she sued the judge for his failure to follow rudimentary due process considerations. The Supreme Court held that judicial immunity would apply unless the judge was acting totally without jurisdiction or the act was non-judicial. *Id.* at 360, 98 S.Ct. at 1106. The Court defined "judicial act" as follows: (1) an act normally performed by a judge and (2) where the parties deal with the judge in his or her judicial capacity. *Id.* at 362, 98 S.Ct. at 1107. The "jurisdiction" language of the *Stump* test supports the rationale for restricting extensions of judicial immunity, for the concept of jurisdiction is peculiarly related to the power of the court to render decisions against the parties before it. But in this case a jurisdiction analysis is inappropriate because the discharge decision does not implicate the power of the court—only the authority of the judge to make such an employment decision. Since the *Stump* test is in the disjunctive, we need to consider the non-judicial act part of the test.

## II

### A.

Most court decisions interpreting judicial acts in the context of judges' hiring and firing decisions have not extended judicial immunity protection. Those cases have uniformly held that such decisions are not "judicial" in nature and thus do not further the doctrine's objective of protecting judicial decisionmaking freedom. The defendant argues that because the selection of court reporters is made exclusively by judges, it meets the first prong of the *Stump* test and because court reporters assist judges in carrying out their official duties the second prong is also met. We find these arguments unpersuasive after a review of other judicial immunity decisions.

■ The defendant cannot find real support for his contention that his act is protected in *Blackwell v. Cook,* 570 F.Supp. 474 (N.D.Ind.1983). In *Blackwell,* Judge Sharp held that the defendant judge's act

of firing a probation officer was a judicial act, thus warranting immunity. The same Indiana statute was involved as here. The *Blackwell* court focused on the close working relationship between the probation officer and the defendant judge, finding that the duties of the probation officer were "inextricably bound up with the very functioning of the court itself." *Id.* at 478. Here there was no such relationship. Moreover, the act of firing by Judge Svetanoff in no way implicated the judge's decisionmaking ability.[1]

A subsequent Northern District of Indiana case criticizes the part of the *Blackwell* decision on which defendant relies. In *Laskowski v. Mears,* 600 F.Supp. 1568 (N.D.Ind.1985), probation officers claimed civil rights violations against a judge for discharge based on age and political affiliation. Judge Moody denied the defendant's summary judgment motion based on absolute judicial immunity. In so doing, Judge Moody explicitly refused to follow the *Blackwell* result. *Id.* at 1574. After noting that the protections of judicial immunity are not for the benefit of a malicious or discriminating judge but rather for the benefit of the public and that the doctrine should be limited to its central purpose, the court held that a determination of whether their relationship implicates the judge's independence was needed, so that summary judgment was improper. *Id.;* see *Forrester v. White,* 792 F.2d 647, 84–1823 (7th Cir. June 5, 1986); *Pruitt v. Kimbrough,* 536 F.Supp. 764 (N.D.Ind.

1982), affirmed memoranda, 705 F.2d 462 (7th Cir.1983); see also *Ex parte Virginia,* 100 U.S. 339, 10 Otto. 339, 25 L.Ed. 676 (1879) (application of judicial immunity depends on the character of the act).

This circuit has recently considered whether a judge should be immune from suit for firing a probation officer. *Forrester v. White,* 792 F.2d 647, No. 84–1823 (7th Cir. June 5, 1986). We granted immunity to the judge by reasoning that because the probation officer advised the judge on substantive decisionmaking, the judge's own discretion was sufficiently at risk to fall within the doctrine's purpose. *Id.* at 657–658. *Forrester* goes beyond *Blackwell* by emphasizing the effect of firing on the judge's ability to render decisions. Because court reporters are not similarly situated such analysis is not dispositive of this case.

Other district court decisions support no immunity when a judge discharges a court reporter. In *Shore v. Howard,* 414 F.Supp. 379 (N.D.Tex.1976), the court reasoned that when the "initiative and independence of the judiciary is not effectively impaired," the doctrine of judicial immunity does not apply.[2] Accord *Clark v. Campbell,* 514 F.Supp. 1300 (W.D.Ark.1981) (judge's duties in hiring and firing county employees were clearly administrative; the judge was not engaged in a judicial function); *Cronovich v. Dunn,* 573 F.Supp. 1340 (E.D.Mich.1983).

Similarly, in *Lewis v. Blackburn,* 555 F.Supp. 713, 723 (W.D.N.C.1983), reversed

---

1. *Blackwell's* relationship and duty analysis seems especially suited to the line of patronage cases. In *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Supreme Court recognized an exception to the First Amendment prohibition against politically motivated patronage discharges. The exception permits policy-making and confidential government employees to be terminated solely on the basis of their political beliefs. The rationale is that elected officials must have the loyalty of their policy-making officials with whom they work closely in order to carry out the political agenda upon which they were elected. Thus in such cases it is necessary to examine the relationship between the defendant and plaintiff to determine whether it is close and

confidential and also the plaintiff's duties to determine whether they are policy-making. See *Meeks v. Grimes,* 779 F.2d 417, 423 (7th Cir. 1985) (bailiff in judge's chambers exempt from First Amendment protection because relationships within chambers must be based on loyalty and rapport). But this protection is limited to First Amendment violations; it is not an absolute immunity against allegations of racial discriminatory discharges.

2. We realize that the holding in *Shore v. Howard* conflicts with *Forrester,* but the *Shore* rationale is proper insofar as it recognizes that acts which effect the judge's independent decisionmaking are shielded by judicial immunity.

on other grounds, 759 F.2d 1171 (4th Cir. 1985), certiorari denied, —— U.S. ——, 106 S.Ct. 228, 88 L.Ed.2d 228, a magistrate sued a court clerk and judge for failing to reappoint her in violation of the First Amendment. The court held that because the power to select magistrates is one that could easily be exercised by others, it is not one "normally performed by a judge" and thus fails the *Stump* test.

A juvenile court staff attorney applicant sued the county judge for failure to hire in *Marafino v. St. Louis County Circuit Court*, 537 F.Supp. 206 (E.D.Mo.1982), affirmed on other grounds, 707 F.2d 1005 (8th Cir.1983). Juvenile staff attorneys' duties included representing and advising juvenile officers, filing petitions, appearing in court, and counseling the judge of the juvenile court. The district court held that she was not dealing with the judge in his judicial capacity during the administrative hiring process, although in her job as staff attorney she would deal closely with the judge in his official capacity. The hiring decision was not a judicial act; therefore judicial immunity was not extended to the defendant.

The defendant also points to *Rheuark v. Shaw*, 628 F.2d 297 (5th Cir.1980), certiorari denied *sub nom. Rheuark v. Dallas County*, 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981), which held that a judge's supervision of court reporters was a judicial function. *Rheuark* is not contrary to our holding that Judge Svetanoff is not immune. In *Rheuark*, three prisoners brought a § 1983 action alleging that their due process rights had been violated because of a long delay in processing transcripts for appeal. The plaintiffs sued the trial judge for his failure to hire a sufficient number of court reporters. Relying on the *Stump* test to grant immunity, the Fifth Circuit concluded that (a) a judge normally supervises a court reporter's preparation of a transcript and (b) the plaintiffs dealt with the judge in his judicial capacity when they requested that he order the reporter to prepare the materials. *Id.* at 305. Unlike the case at bar, this was not a hiring or firing case, rather it involved traditional adversarial proceedings and an attempt to hold a judge liable for discretionary actions within those proceedings.

### B.

In situations outside the traditional judicial decisionmaking arena but not involving personnel decisions, courts, including the Supreme Court, have been hesitant in extending absolute immunity to judges. For example, in *Ex parte Virginia*, 100 U.S. 339, 10 Otto. 339, the Supreme Court declined to extend immunity to a judge who was criminally prosecuted for his actions in selecting jurors. The Court determined that whether the act was judicial depends on the character of the act and not the character of the actor. *Id.* at 342, 10 Otto. at 342. Because the selection of jurors could as easily have been committed to a private person as a judge, the act was not "judicial." *Id.* at 343, 10 Otto. at 343. Likewise, in *Lynch v. Johnson*, 420 F.2d 818 (6th Cir.1970), a member of a "fiscal court" sued the presiding officer, a judge, for forcibly removing him from a meeting and jailing him. The Sixth Circuit found that the fiscal court was administrative and legislative in function (managing the affairs of the county) and therefore the judge's duties were not judicial. No immunity was given. In *Richardson v. Koshiba*, 693 F.2d 911 (9th Cir.1982), a commission of judges sought judicial immunity for its acts in recommending candidates for judicial office. The Ninth Circuit balked, stating that officials were entitled to the protections of absolute immunity because of the special nature of their responsibilities rather than their positions within the government. *Id.* at 914. Thus when a court official acts in a capacity not requiring the exercise of judicial discretion, he or she is not entitled to judicial immunity. In so holding the court distinguished *Clark v. Washington*, 366 F.2d 678, 681 (9th Cir. 1966), which had granted judicial immunity to a state bar association grievance committee. The court noted that the committee was given immunity because of the nature of its inherent judicial function in

prosecuting and adjudicating claims of professional misconduct. The *Richardson* court noted that a balance existed between the need to protect citizens from constitutional violations and the need to protect officials in the performance of their duties. The commission, though made up of judges, performed a purely executive function and therefore was not entitled to judicial immunity. 693 F.2d at 914–915.

Finally, in *Doe v. County of Lake*, 399 F.Supp. 553 (N.D.Ind.1975), judges were sued as to the adequacy of juvenile detention centers and the treatment given to juveniles. Judge Sharp (author of *Blackwell*) held that application of the doctrine of judicial immunity is to be restricted to its single objective—protecting "judicial freedom in the delicate process of deciding civil and criminal matters on their merits." *Id.* at 556. Thus immunity only applies when judicial matters rather than ministerial or administrative duties, are involved. On the facts of *County of Lake*, Judge Sharp reasoned that general responsibility for the administration of the court would not affect the judicial discretion required by the judges in making case-by-case decisions.

### C.

The Supreme Court has expressed its reluctance to grant absolute immunity to quasi-judicial officers. Recently, in *Cleavinger v. Saxner*, 106 S.Ct. 496, members of a federal prison discipline committee (who hear cases of inmate infractions of institutional rules) were given only qualified immunity from civil rights suits. The Court noted that absolute judicial immunity has been extended to certain individuals performing functions closely associated with the judicial process. *Id.* at 500–501 (citing *Butz v. Economou*, 438 U.S. 478, 513, 98 S.Ct. 2894, 2914 (administrative law judge); *Yaselli v. Goff*, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927) (prosecutors); *Imbler v. Pachtman*, 424 U.S. 409, 424–426, 96 S.Ct. 984, 992–993 (prosecutors); *Briscoe v. LaHue*, 460 U.S. 325, 335, 103 S.Ct. 1108, 1115, 75 L.Ed.2d 96 (1983) (witnesses)).

But where officials seek absolute exemption from personal liability for unconstitutional conduct, they "bear the burden of showing that public policy requires an exemption of that scope." *Id.*, 106 S.Ct. at 501 (quoting *Butz*, 438 U.S. at 506, 98 S.Ct. at 2910). The application of immunity is based on function, the nature of the responsibilities and acts. Because (1) the prison discipline function is not a "classic" adjudicatory one; (2) the members of the prison disciplinary committee are not independent, neutral or detached; and (3) the lack of procedural safeguards, the committee does not present the "rare and exceptional circumstances warranting the application of judicial immunity." *Id.*, 106 S.Ct. at 502–504.

Similarly, in *Malley v. Briggs*, 106 S.Ct. 1092, the Supreme Court refused to extend absolute immunity to state police officers who prepared complaints and affidavits in order to obtain arrest warrants. The Court held that a police officer applying for a warrant was too far removed from the judicial phase of criminal proceedings to warrant judicial immunity. *Id.* at 1097. In so holding, the Court additionally noted that a prosecutor is required to adhere to the organized bar's professional standards, whereas for police officers there is no comparably well developed mechanism for controlling police misconduct. *Id.* at 1097 n. 5.

■ The consensus of these cases is that judicial immunity should not be extended lightly or only because the actor is a judge. Before a judge is granted immunity, courts should examine the acts complained of to determine whether they are "judicial." *Lojuk v. Johnson*, 770 F.2d 619, 622 (7th Cir.1985), certiorari denied, —— U.S. ——, 106 S.Ct. 822, 88 L.Ed.2d 795. If the acts do not involve the judicial process so that a fear exists that freedom of judicial decisionmaking may be stifled, the judge should not be free from suit.

### III

■ The question before us is whether the act of firing a court reporter implicates the judicial decisionmaking process. In

this case the answer is a resounding no. Hiring and firing of employees is typically an administrative task. It involves decisions of a personal rather than impartial nature, which is integral to judicial decisionmaking. The decision to fire the plaintiff did not involve judicial discretion; in other words, the judge did not utilize his education, training, and experience in the law to decide whether or not to retain plaintiff. The administrative act of firing the plaintiff will not assist the judge in interpreting the law or exercising judicial discretion in the resolution of disputes. Certainly the court reporter assists the judge in his or her official capacity, but so does everyone else employed within the judge's chambers—the secretary, bailiff, law clerk, court reporter, probation officer, clerk of court, janitor—they all assist in the smooth operation of the judicial process. That, however, does not entitle a judge to absolute immunity in all employment-related decisions. Providing judicial immunity in employment actions alleging civil rights violations will not further the objective of the doctrine. The judge will not be more inhibited in rendering decisions because he may be called to task for firing a court reporter. Shielding judges from personal liability in their hiring and firing decisions cannot outweigh the need to protect the constitutional rights of public employees. Unlike situations more closely aligned with the judicial process, there is no other adequate means of review for a judge's possible constitutional violations. A litigant who has not received appropriate due process may appeal the case to a higher court for review, whereas normally the only means an at-will employee has to question and correct the motives of a judge's employment decisionmaking is a civil rights suit. The absence of adequate procedural protections was emphasized in *Malley*, 106 S.Ct. at 1097 n. 5, *Cleavinger*, 106 S.Ct. at 504, *Butz*, 438 U.S. at 512–513, 98 S.Ct. at 2913–2914, and *Mitchell v. Forsyth*, — U.S. ——, 105 S.Ct. 2806, 2814, 86 L.Ed.2d 411 (1985).

Because allowing judges to hire and fire court reporters with impunity will not further the objectives of the judicial immunity doctrine—principled decisionmaking—we decline to extend it to a judge's decision to terminate a court reporter. Therefore the district court's denial of defendant's motion for partial summary judgment is affirmed.[3]

---

**3.** We do not discuss qualified immunity because that doctrine was not raised. However, it is interesting to note that qualified immunity was rejected by the Eighth Circuit in *Goodwin v. Circuit Court of St. Louis County*, 729 F.2d 541, 545–546 (8th Cir.1984), where the court held that because intentional discrimination was necessary for liability under § 1983, it was illogical to argue "good faith" for purposes of qualified immunity. But cf. *Rodriguez v. Board of Education*, 620 F.2d 362 (2d Cir.1980).