Gail S. McDONALD, Plaintiff,

v.

James KRAJEWSKI, Individually and as Judge of Lake County Court, Division III, et al, Defendants.

Civ. No. H 86–477.

United States District Court,
N.D. Indiana,
Hammond Division.

Nov. 13, 1986.

Norman R. Buls, Willis, Buls & Johnston, Portage, Ind., for plaintiff.

Robert Spear, Chief Counsel, Office of Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, Ind., for defendants Krajewski & Danikolas.

Ray Szarmach, East Chicago, Ind., for defendant Lake County Council.

Hamilton L. Carmouche, Merrillville, Ind., for defendant Bd. of Com'rs of Lake County.

## ORDER

MOODY, District Judge.

This matter is before the court on defendant James Krajewski's and defendant James Danikolas' Motion to Dismiss filed on September 9, 1986. Plaintiff Gail McDonald responded to this motion on September 16, 1986. For the reasons discussed below, the Motion to Dismiss is GRANTED in part and DENIED in part.

## FACTUAL BACKGROUND

The plaintiff, Gail S. McDonald, was employed as a clerk-secretary for the Lake County Court, Division III from January 16, 1978 until August 5, 1985. From January 16, 1978 until March 20, 1985, plaintiff worked under the direction of Judge Orval W. Anderson. On June 20, 1985, Judge Anderson resigned and defendant Krajewski was appointed judge of Lake County Court, Division III. On August 5, 1985, defendant Krajewski informed plaintiff that he was eliminating her clerk-secretary position and that she was discharged from her employment with the court.

On June 13, 1986, McDonald brought suit against defendants Krajewski and Danikolas and several other defendants under 42 U.S.C. §§ 1983 and 1985, alleging violations of her first and fourteenth amendment rights. Specifically, plaintiff claims defendant Krajewski discharged her because she was a political supporter of Orval Anderson, Krajewski's predecessor as Judge of Lake County Court, Division III. According to plaintiff, defendant Krajewski employed another individual as clerk-secretary for the court on August 5, 1985, the exact date Krajewski informed plaintiff her position was being eliminated. Thus, plaintiff claims the reason given by defendant Krajewski for discharging her was merely a pretext to effectuate a political patronage dismissal.

McDonald filed suit against defendant Krajewski in both his individual capacity and in his official capacity as judge of Lake County Court, Division III. Judge James Danikolas is named as a defendant in this action only in his official capacity as Chief Judge of Lake Superior Court. According to plaintiff, defendant Danikolas is the only individual under Indiana law with the power to discharge court personnel.

Plaintiff seeks an order from this court directing defendants to reinstate her to her former position as clerk-secretary. Plaintiff also seeks compensatory damages and attorneys fees pursuant to 42 U.S.C. § 1988.

## I.

### STANDARD OF REVIEW

It is well established that in ruling on a motion to dismiss, the court must accept the factual allegations contained in the complaint as true. *Fromm v. Rosewell*, 771 F.2d 1089, 1091 (7th Cir.1985). Further, all reasonable inferences which can be drawn from the facts must be viewed in the light most favorable to the plaintiff. *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle him or her to relief. *Id.*

## II.

### INDIVIDUAL ACTION OF DEFENDANT DANIKOLAS

In her complaint, McDonald brought suit against defendant Danikolas only in his official capacity as Chief Judge of the Lake Superior Court. Danikolas now requests dismissal of plaintiff's complaint against him on the grounds that he lacks any personal involvement in or responsibility for plaintiff's discharge, as required by § 1983. In response to Danikolas' request for dismissal, McDonald contends that Danikolas is a necessary party to this litigation. According to McDonald, if this Court finds reinstatement to be an appropriate remedy, Danikolas, as Chief Judge, is the only official capable of effecting reinstatement under Indiana law.

■ It is well settled that to establish a § 1983 claim for damages, a plaintiff must demonstrate a defendant's personal responsibility for deprivation of his constitutional rights. *Wellman v. Faulkner*, 715 F.2d 269, 275 (7th Cir.1985); *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir.1981). If the alleged deprivation involves an official, the personal responsibility requirement is satisfied if the official "acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional depriva-

tion occurs at her direction or under her knowledge and consent." *Crowder v. Lash,* 687 F.2d 996, 1005 (7th Cir.1982). Absent any personal involvement in the deprivation or any "deliberate or reckless disregard" for the plaintiff's constitutional rights, a complaint under § 1983 fails to establish a cause of action for damages against the official.

In addition, the very language of § 1983 predicates liability upon the defendant's personal involvement in the alleged deprivation. Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the district of Columbia, *subjects, or causes to be subjected,* any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... (emphasis added).

It is apparent from the language of the statute that a causal connection must exist between the defendant's actions and the plaintiff's alleged deprivation of constitutional rights before the defendant is liable under § 1983. Under the statute, a deprivation becomes actionable only when the defendant "subjects" or "causes to be subjected" another individual to deprivation of any of his rights, privileges and immunities. Once again, there is no actionable § 1983 claim for damages unless the defendant actually participates in the claimed constitutional violation.

In the present case, plaintiff's complaint contains no specific allegations of any personal misconduct on the part of defendant Danikolas. In fact, nothing in the complaint even remotely suggests that Danikolas was personally involved in or responsible for plaintiff's discharge. According to the plain language of § 1983 and the interpretation given it by the Seventh Circuit in *Wellman* and *Duncan,* personal involvement on the part of the defendant is a necessary prerequisite to establishing a § 1983 claim for damages.

■ Because plaintiff has failed to demonstrate Danikolas' personal responsibility for her discharge, the § 1983 claim for damages against Danikolas is hereby DISMISSED. However, the court also determines that defendant Danikolas is still a necessary party to this litigation. In her complaint, plaintiff requests an order from this court directing defendants to reinstate her to her former position of employment. According to plaintiff, defendant Danikolas is the only official who can hire, fire or reinstate county court personnel under Indiana Code 33–10.5–2–4.5. At this stage of the litigation, it appears to the court that plaintiff's assertion is correct. If this court orders reinstatement, it appears that defendant Danikolas is the official in the best position to enforce this order. Therefore, the court retains Danikolas as a party to this action for the singular purpose of providing the prospective relief requested by McDonald. If the court later determines that Danikolas is not a necessary party for purposes of plaintiff's reinstatement, plaintiff's entire complaint against him will subsequently be dismissed.

## III.

### THE IMMUNITY DEFENSE

Defendant Krajewski requests dismissal of plaintiff's complaint on the ground that he is immune from suit under the doctrine of absolute immunity. In the alternative, Krajewski raises the defense of qualified immunity.

■ The well-established doctrine of immunity recognizes that judges are not subject to personal liability for judicial acts performed within their jurisdiction. *Wilkes v. Dinsman,* 7 How. 89, 48 U.S. 89, 12 L.Ed. 618 (1849). Immunity totally insulates judges from liability for actions taken within their judicial capacity, even if the judge acts maliciously or corruptly. *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978).

The underlying purpose of immunity is to preserve judicial independence in the decisionmaking process. *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871). In adjudicating controversies between parties, judges must be free to render decisions without fear of personal liability for those decisions. *Stump*, 436 U.S. at 364, 98 S.Ct. at 1108–09; *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Although judicial immunity is absolute, it should only apply when necessary to protect the independent nature of the judicial decisionmaking process. *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

### A. Absolute Immunity

The next question presented in this case is whether judicial immunity extends to a judge's hiring and firing decisions. Two recent Seventh Circuit decisions reach opposite answers.

In *Forrester v. White*, 792 F.2d 647 (7th Cir.1986), *rehearing pending*, the court found a judge's dismissal of a probation officer to be a judicial act entitled to absolute immunity. The court reasoned that the probation officer "render[ed] advice and recommendations for dispositions to be made by the judge, and the information she provided directly implicated the exercise of the judge's discretionary judgment." 792 F.2d at 657. Because the probation officer provided advice to the judge, she dealt with the judge in his judicial capacity. Therefore, the judge was acting within the scope of his judicial capacity when he discharged the probation officer. Because the judge acted within his judicial capacity, he was entitled to absolute immunity. *Id.* at 658.

In *McMillan v. Svetanoff*, 793 F.2d 149 (7th Cir.1986), *cert. pending*, the Seventh Circuit reached a contrary result only five days after the *Forrester* decision. *McMillan* involved the firing of a court reporter. Before the court addressed the doctrine of immunity, it recognized that "most court decisions interpreting judicial acts in the context of judge's hiring and firing decisions have not extended judicial immunity

protection." 793 F.2d at 151. In refusing to extend immunity to the judge for firing the court reporter, the court first noted that hiring and firing of employees is an administrative rather than judicial act. *Id.* at 155. Hence, the judge's decision to dismiss the court reporter did not ever implicate the judicial decisionmaking process. *Id.* at 154–55. Because the judge's actions did not involve the judicial process, he was not entitled to immunity.

The differing results in *Forrester* and *McMillan* apparently hinge on the status of the employee in question. If the employee provides advice and recommendations to the judge, he deals with the judge in his judicial capacity. Once the judicial process is involved, the judge is entitled to absolute immunity for his action. Conversely, if the employee performs ministerial tasks, he deals with the judge in his administrative capacity and because the judicial decisionmaking process is not involved, there is no need to insulate the judge from civil liability by granting judicial immunity.

The court finds that the present plaintiff's position as clerk-secretary is more closely associated with the court reporter in *McMillan*. In her complaint, the plaintiff states that her position involved "the carrying out of clerical type work routine in nature." (Complaint at 3). The court fails to see how such ministerial tasks implicate the judicial decisionmaking process. Accordingly, defendant's motion to dismiss on the grounds of absolute immunity will be DENIED.

The court further notes that even if defendant Krajewski was entitled to absolute immunity, this lawsuit would still not be dismissed. In *Pulliam v. Allen*, 466 U.S. 522, 104 S.Ct. 1970, 1981, 80 L.Ed.2d 565 (1984), the Supreme Court held that judicial immunity does not bar a suit for prospective injunctive relief against the judge. In the present case, McDonald requests an order from this court directing defendants to reinstate her to her former position. This request for reinstatement is

similar to a request for injunctive relief. Therefore, even if defendant Krajewski was entitled to absolute immunity, his immunity would not bar plaintiffs request for equitable relief.

### B. Qualified Immunity

■ Defendant Krajewski also requests dismissal of plaintiff's complaint on the basis of qualified immunity. Qualified or "good faith" immunity is an affirmative defense which must be raised by the defendant. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980). The qualified immunity defense traditionally contained both objective and subjective elements. *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court abandoned the objective-subjective analysis and focused on the objective reasonableness of the public official's conduct.

Under *Harlow*, a public official is entitled to qualified immunity when he neither "knew [n]or should have known that the action he took ... would violate the constitutional rights of the plaintiff...." 457 U.S. at 815, 102 S.Ct. at 2737. Qualified immunity protects the official from liability for damages only when the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. "Thus, under *Harlow* [a] district court must conduct a two-part analysis: (1) Does the alleged conduct set out a constitutional violation? and (2) Were the constitutional standards clearly established at the time in question?" *Wade v. Hegner*, 804 F.2d 67, 70 (7th Cir. 1986); *see also Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Lojuk v. Johnson*, 770 F.2d 619 (7th Cir.1984).

■ The Supreme Court's decision in *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct.

2673, 49 L.Ed.2d 547 (1976), is dispositive of Krajewski's qualified immunity defense. In *Elrod*, the Supreme Court held that non-policymaking, non-confidential government employees could not be discharged solely on political grounds. (*See* discussion of *Elrod* in Part VI of this Order). On the factual record presently before the court, plaintiff has established a prima fcie case of dismissal based upon political patronage. Because of *Elrod's* prohibition against such dismissals, the court finds that plaintiff has satisfied the first requirement of the two-part analysis set out in *Harlow*.

The remaining question is whether the constitutional standards of *Elrod* were clearly established at the time of plaintiff's discharge. Krajewski's intent to discriminate against plaintiff is not a relevant consideration at this point in the analysis; instead, the court focuses on the state of the law at the time of Krajewski's alleged misconduct to determine if the constitutional violation was "clearly established." *Wade*, 804 F.2d 67, 70.[1]

The Supreme Court handed down its decision in *Elrod* in 1976, at least 8 years before Krajewski dismissed plaintiff. Four years after *Elrod*, and at least 4 years before the present plaintiff's discharge, the Supreme Court reiterated the constitutional rights of non-policymaking, non-confidential government employees in *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). The court of appeals in this circuit recognized the constitutional standard of *Elrod* in *Nekolny v. Painter*, 653 F.2d 1164 (7th Cir.1981), *cert. denied*, 445 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982). Therefore, the court finds that at the time defendant Krajewski discharged plaintiff, August 1985, the constitutional standard against political discharge was "clearly established." In fact, after *Elrod* in 1976 and *Branti* in 1980, the law could hardly be more clear.

In light of the foregoing, the court holds that dismissal of plaintiff's complaint on

---

1. "Intent is relevant to the threshold question of whether the defendant violated plaintiff's constitutional rights but is ignored for a question of whether that right was 'clearly established' at the time of the incident." *Wade v. Hegner*, 804 F.2d 67, 70 (7th Cir.1986).

the ground of qualified immunity is inappropriate and is, therefore, DENIED.

## IV.

### CONSPIRACY CLAIM

Defendants Krajewski and Danikolas request dismissal of plaintiff's conspiracy claim on the ground that plaintiff's complaint fails to allege any invidious, class-based discriminatory animus on the part of defendants, as required by 42 U.S.C. § 1985(3).

To establish a cause of action under § 1985(3) the plaintiff must allege, and subsequently prove, four elements. Those elements include:

(1) a conspiracy;

(2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and

(3) an act in furtherance of the conspiracy;

(4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Griffin v. Breckenridge*, 403 U.S. 88, 101–102, 91 S.Ct. 1790, 1797–98, 29 L.Ed.2d 338 (1971); *Grimes v. Smith*, 776 F.2d 1359, 1363 (7th Cir.1985). In its interpretation of the second element, the Supreme Court requires that the alleged deprivation be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action." *Griffin*, 403 U.S. at 102, 91 S.Ct. at 1798.

In her complaint, McDonald alleges that defendant Krajewski discharged her solely because of her political support for Orval Anderson, Krajewski's predecessor in office. McDonald further alleges that "defendant Krajewski acted in concert with and pursuant to a joint plan with other persons in effecting plaintiff's discharge and hiring her replacement." (Complaint paragraph 22). Nothing in plaintiff's complaint indicates discrimination on the basis

of race. Therefore, under *Griffin*, plaintiff's conspiracy claim is valid only if she belongs to a class entitled to protection under § 1985(3).

In *Griffin*, the Supreme Court made it unequivocally clear that racially motivated conspiracies are prohibited under § 1985(3). Because *Griffin* involved a racially motivated conspiracy, the Court expressly reserved the question of whether a conspiracy motivated by invidiously discriminatory intent other than racial bias stated a cause of action under § 1985(3). 403 U.S. at 102, n. 9, 91 S.Ct. at 1798, n. 9. This question remained unanswered until the Court's decision in *United Brotherhood of Carpenters and Joiners of America, Local 610, AFL–CIO v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983).

In *Scott*, the Supreme Court examined whether "wholly non-racial, but politically motivated" conspiracies fell within the purview of § 1985(3). In determining whether the scope of § 1985(3) extended to non-racial political conspiracies, the Court examined the legislative history behind § 1985(3). The section was originally enacted as part of the so-called "Ku Klux Klan Act of 1871." The Court stated:

The predominent purpose of § 1985(3) was to combat the prevalent animus against Negroes and their supporters. The latter included Republicans generally, as well as others, such as Northerners who came South with sympathetic views towards the Negro. Although we have examined with some care the legislative history that has been marshaled in support of the position that Congress meant to forbid wholly non-racial, but politically motivated conspiracies, we find difficult the question whether § 1985(3) provided a remedy for every concerted effort by one political group to nullify the influence of or do other injury to a competing group by use of otherwise unlawful means. To accede to that view would go far toward making the federal courts, by virtue of § 1985(3), the monitors of campaign tactics in both state and federal elections, a role that the courts should

not be quick to assume. If respondents' submission were accepted, the proscription of § 1985(3) would arguably reach the claim that a political party has interfered with the freedom of speech of another political party by encouraging the heckling of its rival's speakers and the disruption of the rival's meetings.

*Scott,* 463 U.S. at 836, 103 S.Ct. at 3360. In sum, the *Scott* Court refused to extend the coverage of § 1985(3) beyond those classes Congress intended to protect in 1871: blacks and their supporters.

In this circuit, the court of appeals recently held that § 1985(3) does not reach non-racial, political conspiracies. *Grimes v. Smith,* 776 F.2d 1359, 1366 (7th Cir. 1985). In *Grimes,* the Seventh Circuit noted some support from other circuits for the proposition that the victims of non-racial, political conspiracies may state a cause of action under § 1985(3). *Id.* However, the court quickly added that those cases were decided prior to *Scott.* In light of the *Scott* decision, the *Grimes* court held that Congress enacted § 1985(3) for a specific purpose. The court concluded that the legislative history behind § 1985(3) does not extend protection of the statute to any conspiracies other than those motivated by a racial, class-based animus against "Negroes and their supporters." 776 F.2d at 1366.

Like *Scott,* McDonald's complaint presents a "wholly non-racial, but politically motivated" conspiracy. McDonald claims that defendant Krajewski discharged her solely because of her political support for Orval Anderson. However, the Supreme Court's decision in *Scott* clearly indicates that political affiliation is not the type of class-based animus that triggers the protection of § 1985(3).

█ In addition, even if all the allegations in plaintiff's complaint are taken as true, the complaint fails to state a cause of action under § 1985(3). Section 1985(3) provides a cause of action when an individual is conspired against because of his membership in a particular class. Conversely, § 1985(3) does not provide a cause of action for a conspiracy directed at an individual. *Brainerd v. Potratz,* 421 F.Supp. 836, 840 N.D.Ill.1976). Plaintiff's complaint only alleges that defendant conspired with others to effect her personal discharge. Thus, the complaint does not state a cause of action under § 1985(3).

█ In the absence of any class-based animus, plaintiff's action under § 1985(3) must necessarily fail. Because the complaint contains no allegations of a class-based, invidiously discriminatory animus as required by *Griffin* and *Scott,* the § 1985(3) claim is unsupportable and will be DISMISSED.

## V.

### DUE PROCESS CLAIM

By her complaint, McDonald claims defendant Krajewski failed to follow proper statutory procedures in effecting her discharge, thereby violating her fourteenth amendment due process rights. Defendant Krajewski requests dismissal of plaintiff's due process claim on the grounds that McDonald was an employee at will with no legitimate expectation of continued employment and thus not entitled to procedural due process protections.

█ Before the due process protections of the fourteenth amendment become applicable, there must first exist a protectable liberty or property interest. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Malcak v. Westchester Park Dist.,* 754 F.2d 239 (7th Cir.1985). In the context of government employment, the Supreme Court in *Roth* held that a public employee must establish more than a "unilateral expectation of employment" 408 U.S. at 577, 92 S.Ct. at 2709. A protectable property interest exists only if a public employee possesses a "legitimate claim of entitlement" in his position. *Id.* Under the *Roth* analysis, the right to procedural due process is inextricably tied to the existence of a protectable property inter-

est. If no property interest exists, no procedural due process attaches.

To determine the existence of a protectable property interest in employment, the court must turn to state law. As discussed by the Supreme Court in *Roth:*

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. Therefore, this court's examination of McDonald's due process claim must necessarily begin with Indiana law. If Indiana law creates no "legitimate claim of entitlement" to continued employment, plaintiff lacks a protectable property interest as required by *Roth* and is not entitled to procedural due process.

Indiana Code 33–5–29.5–8(a) governs disposition of plaintiff's due process claim. This section reads:

> Appointment of personnel; duties, salaries
>
> Sec. 8. (a) The senior judge of each division may appoint such number of bailiffs, court reporters, probation officers, and other personnel, as shall in the opinion of the senior judge be necessary to judicially and efficiently facilitate and transact the business of the division.
>
> .    .    .    .    .
>
> The officers and persons so appointed shall perform such duties as are prescribed by the senior judge of each respective division and shall serve at the pleasure of the senior judge.

The "at the pleasure of" provision in the statute is of critical import in determining whether, under Indiana law, plaintiff possesses a protectable property interest in her employment. The language contained in the statute clearly indicates the Indiana legislature's intent not to give employees appointed by the court a property interest in their positions. If the legislature intended to create a property interest, it could have done so by excluding the "at the pleasure of" provision.

Given the language of the statute, an individual who serves at the pleasure of the judge is similar to an at-will employee. Under Indiana law, at-will government employees possess no property interest in their employment. *Indiana Alcoholic Beverage Commission v. Gault,* 405 N.E.2d 585 (Ind.App.1980). Because no property interest exists, no procedural due process attaches. *Id.*

■ Under the test established by *Roth,* plaintiff has failed to establish any "legitimate claim of entitlement" under Indiana law to her position as clerk-secretary for the court. Absent a "legitimate claim of entitlement," plaintiff does not possess a property interest in employment sufficient to trigger the due process requirements of the fourteenth amendment. Because no property interest exists, the court need not reach the question of whether defendant Krajewski followed proper procedure in dismissing McDonald. The due process claim in plaintiff's complaint is hereby DISMISSED.

## VI.

### FIRST AMENDMENT CLAIM

■ In her complaint, McDonald claims defendant Krajewski violated her first amendment rights by discharging her solely because of her political support for Orval Anderson. Defendants seek dismissal of plaintiff's claim by asserting that McDonald was a confidential employee and, as such, was an exception to the first amendment prohibition against politically motivated patronage discharges.

In *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the Supreme Court held that non-confidential, non-policy-making public employees cannot be discharged solely for exercising their first amendment freedoms such as political beliefs, expressions and associations. Furthermore, first amendment freedoms are

protected regardless of the existence of a property right in one's employment under state law. The *Elrod* decision firmly established that first amendment freedoms were inviolable and a government employee could only be dismissed on political grounds if he fit under the policymaker or confidential employee exception.

In *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Court moved away from the policymaking/confidential employee analysis and focused on the actual function performed by the employee. As stated by the Court:

> In sum, the ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position; rather, the question is *whether the hiring authority can demonstrate* that party affiliation is an appropriate requirement for the effective performances of the public office involved.

445 U.S. at 518, 100 S.Ct. at 1295 (emphasis added).

The Seventh Circuit's standard for political patronage dismissal is articulated in *Nekolny v. Painter,* 653 F.2d 1164 (7th Cir.1981), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982). Like the Supreme Court in *Branti,* the Seventh Circuit focused on the function performed by the government employee. The court held:

> The test is whether the position held by the individual authorizes, either directly or indirectly, meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation.

653 F.2d at 1170. Although *Branti* and *Nekolny* establish the standard against which patronage dismissals must be examined, the policymaker/confidential employee exception in *Elrod* remains quite useful. With this standard in mind, the court now proceeds to an examination of plaintiff's first amendment claim.

Given plaintiff's position as clerk-secretary, she obviously does not fall within the scope of the policymaker exception. Therefore, defendant's dismissal of McDonald is permissible only if she can be classified as a confidential employee under *Elrod* or if, under *Branti,* her political affiliation was essential to effectively performing her responsibilities.

On the factual record presently before the court, it is impossible to determine whether plaintiff was a confidential employee. Furthermore, under *Branti,* the hiring authority must demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved. This test places the burden of proof squarely on the employer, not on the employee.

As applied to the case at bar, defendants must demonstrate that plaintiff's political affiliation was a legitimate qualification for employment. Defendants Motion to Dismiss contains nothing more than the bald assertion that "it is not at all clear that Plaintiff was not a confidential employee." (Motion to Dismiss, p. 8). Dismissal of plaintiff's first amendment claim at this stage of the litigation would be inappropriate.

## VII.

### CONCLUSION

It is therefore ORDERED that the Motion to Dismiss is GRANTED in part and DENIED in part, as follows:

1. Dismissal of the § 1983 claim for damages against defendant Danikolas is GRANTED. However, Danikolas remains a party to this action for the possible purpose of providing the prospective relief requested by plaintiff.

2. Dismissal on the basis of absolute or qualified immunity is DENIED.

3. Dismissal is GRANTED as to plaintiff's § 1985(3) conspiracy claim.

4. Dismissal is GRANTED as to plaintiff's due process claim.

5. Dismissal is DENIED as to plaintiff's first amendment claim.