Robert J. BRYANT, Plaintiff,

v.

Earl E. O'CONNOR

and

Perry D. Mathis, Defendants.

No. 85–4348.

United States District Court,
D. Kansas.

Dec. 2, 1986.

Fred W. Phelps, Sr., and Fred W. Phelps, Jr., Phelps, Chtd., Topeka, Kan., for plaintiff.

Benjamin L. Burgess, Jr., U.S. Atty., Alleen S. Castellani, Asst. U.S. Atty., Topeka, Kan., Marianne Finnerty/Timothy Garren, and Nicki L. Koutsis, Torts Branch, Civ. Div., Department of Justice, Washington, D.C., for defendants.

## ORDER

BRIMMER, Chief Judge.

This matter came before the Court on defendants' motion to dismiss or for summary judgment. The Court, having reviewed the pleadings and being fully advised in the premises, FINDS and ORDERS as follows:

This is an action for damages and injunctive relief. Plaintiff, Robert Bryant, is a former probation officer for the United States District Court for the District of Kansas. Defendants are the Chief Judge and the Chief Probation Officer for the District of Kansas. Bryant alleges that the defendants terminated his employment and denied him equal employment opportunities because he is black, in violation of the first and fifth amendments to the United States Constitution and in violation of 42 U.S.C. § 1981. Bryant also alleges that he was discharged in retaliation for complain-

ing about racial discrimination. Bryant further alleges that a decision by the judges of the District of Kansas to disqualify themselves from hearing this case constituted an unlawful conspiracy to interfere with his access to the courts, in violation of 42 U.S.C. § 1985(2), (3).

Defendant Mathis, Bryant's immediate supervisor, suspended Bryant for disciplinary reasons on October 26, 1984. Defendants' Exhibit A. Bryant wrote to Chief Judge O'Connor and requested a hearing. Defendants' Exhibit B. Mathis recommended to Chief Judge O'Connor that Bryant be discharged as a probation officer for gross negligence in carrying out his duties and for failing to maintain adequate records. The judges of the district convened *en banc* to consider the recommendation that Bryant be fired. The unusually full and complete hearing before all 9 senior and active judges of the district was held on December 28, 1984 in federal district court. Bryant was represented by counsel and a court reporter was present. The Court was very patient, but very thorough. Defendants' Exhibit E. After the hearing, the judges unanimously voted to discharge Bryant effective February 28, 1985. Defendants' Exhibit F. Bryant then requested an investigation by the district's equal employment opportunity coordinator. That investigation concluded that Bryant was discharged because of poor performance and not because of racial animus. Defendants' Exhibit G. Bryant's appeal from that decision was dismissed as untimely. Defendants' Exhibit J.

Bryant then filed this action. The case was assigned to one of the judges of the district court. However, all of the judges in the district (except Chief Judge O'Connor) recused themselves after a meeting on August 16, 1985. *See* Defendants' Exhibit N. Chief Judge O'Connor then issued an order disqualifying himself. Defendants' Exhibit O. Bryant then amended his complaint, alleging that the *en banc* decision of the judges of the District of Kansas to disqualify themselves from hearing this case constituted an unlawful conspiracy to interfere with his access to the courts, in violation of 42 U.S.C. § 1985(2), (3).

Defendants move to dismiss or for summary judgment. Defendants contend that Chief Judge O'Connor is entitled to judicial immunity, that Mathis is entitled to quasi-judicial immunity, that Bryant has neither a statutory nor an implied remedy, and that Bryant was discharged for legitimate, nondiscriminatory reasons. Oral argument of that motion has not been held, pursuant to Rule 15(d) of the Rules of Practice of the United States District Court for the District of Kansas. The motion raises matters beyond the pleadings and will therefore be treated as one for summary judgment. Fed.R.Civ.P. 12(b).

The Court, in an effort to resolve plaintiff's request for extensive discovery involving depositions of all of the Kansas judiciary, issued an "Order on Motions", dated February 27, 1986, ordering plaintiff to file a specific discovery plan, limited to responding to defendants' motion to dismiss or for summary judgment. On March 10, 1986 the plaintiff filed a proposed discovery plan, to which the defendants filed an objection. On March 28, 1986 the Court entered its "Order on Motions for Discovery", giving the plaintiff one more chance to comply with the order of February 27, 1986, by granting the plaintiff ten (10) additional days in which to file affidavits stating specific probative facts supporting the allegations of the complaint and which were necessary under Fed.R. Civ.P. 56(e), and staying discovery until such time as the Court rules on the motion to dismiss. From that order the plaintiff filed a Writ of Mandamus to the Court of Appeals for the Tenth Circuit which was denied on April 16, 1986. The plaintiff filed a motion for a rehearing thereof and reconsideration in *en banc*, which was denied on June 13, 1986. It was then on June 27, 1986 that the Court entered its "Order on Denial of Motions For Rehearing *En Banc*" in which it ordered the plaintiff to file within ten (10) days from the filing date of that order the plaintiff's response to the previous order of February 27, 1986 and to file affidavits required by Rule 56(e), F.R. C.P., in response to the defendants' motion to dismiss or for summary judgment. By

the latter order the plaintiff was given a final third opportunity to show compliance with Rule 11, of Fed.R.Civ.P., and to file an appropriate response to defendants' motion for summary judgment. Again the plaintiff has failed to comply. The Court has examined the plaintiff's compliance filed July 11, 1986 and finds it unsatisfactory, conclusory, largely irrelevant, and inadequate. It fails also to comply with Local Rule 15(c) specifying the manner in which a party opposing summary judgment must respond. Nevertheless, the Court has considered it for whatever it is worth. The Court has concluded that no further discovery, before disposition of this case on summary judgment, should occur.

██ Bryant contends that summary judgment should be denied because defendants failed to comply with Local Rule 15(c) and because discovery is incomplete. Local Rule 15(c) provides that memoranda supporting motions for summary judgment must contain "a concise statement of material facts as to which movant contends no genuine issue exists. The facts shall be numbered and shall refer with particularity to those portions of the record upon which movant relies." Failure to comply with Local Rule 15(c) justifies denying a motion for summary judgment. *Love v. Phillips*, No. 83–4103, slip op. at 1 (D.Kan. Mar. 26, 1985)

Defendants' memorandum in support of the motion for summary judgment includes a section entitled "Statement of Facts" which concisely states the facts which defendants claim are undisputed. Defendants cite to the record with particularity. Defendants did fail to number each sentence in the statement. This omission, however, does not prejudice the plaintiff or hamper this Court. The purpose of Local Rule 15(c) is to enable opposing counsel to determine the facts relied upon by a movant for summary judgment. *Powell v. United States Postal Serv.*, No. 81–1108, slip op. at 2 (D.Kan. Nov. 2, 1983). Here, defendants' statement of facts is sufficiently clear to enable counsel and this Court to determine defendants' factual contentions without sifting through the pleadings. De-

fendants' failure to number each sentence does not frustrate the purpose of Local Rule 15(c) and does not require denial of the motion for summary judgment.

██ Bryant also argues that summary judgment is inappropriate because discovery is incomplete. Discovery is strongly favored before summary judgment is granted. *Miller v. United States*, 710 F.2d 656, 666 (10th Cir.1983). A party who is unable to present specific facts in opposition to the motion may avoid summary judgment by filing an affidavit pursuant to Fed.R.Civ.P. 56(f). *Weir v. Anaconda Co.*, 773 F.2d 1073, 1082 (10th Cir.1985). Rule 56 does not require, however, that summary judgment await the completion of discovery. *Id.* at 1081.

██ Bryant's counsel filed an affidavit pursuant to Fed.R.Civ.P. 56(f). The affidavit states that affiant is one of the plaintiff's attorneys, that the affidavit was filed in good faith and that the motion to dismiss should be treated as one for summary judgment. The affidavit further states that:

[A] barrier which has prevented plaintiff from discovering the factual information necessary to combat defendants' summary judgment motion is that the case has just recently been filed, that final service has more recently been made, and no discovery has been taken, although plaintiff has attempted to commence written discovery. Further, that plaintiff requires discovery, specifically the written discovery now pending, the deposition of the named defendants, the deposition of one or more federal judges in Kansas, the deposition of one or more federal court personnel in Kansas, the deposition of one or more employee [sic] of the United States Probation Office in Kansas, and otherwise, to fully respond to said summary judgment motion.

This averment does not justify postponing summary judgment. Bare assertions under Rule 56(f) may not forestall a motion for summary judgment. *Patty Precision v. Brown & Sharpe Mfg. Co.*, 742 F.2d 1260, 1264 (10th Cir.1984). The party filing the affidavit must show how additional

time will permit rebuttal of a movant's assertions. *Id.* at 1265. The affidavit filed by plaintiff's counsel fails to show why additional time will enable the plaintiff to rebut defendants' arguments.

■ Other factors suggest that the affidavit is specious. An attorney's signature on a pleading constitutes a certificate that, to the best of the attorney's knowledge, formed after reasonable inquiry, the pleading is well grounded in fact. Fed.R.Civ.P. 11. Plaintiff argues that he has insufficient facts to respond to the motion for summary judgment. This suggests that plaintiff failed to comply with the requirements of Rule 11. Moreover, plaintiff's argument is disingenuous. Plaintiff claims that he interviewed several judges of the District of Kansas and investigated the factual background of this case. *See* PLAINTIFF'S COMPLIANCE WITH "ORDER ON DENIAL OF MOTION FOR REHEARING EN BANC," Affidavit Pursuant to Rule 11, F.R.Civ.P., at Appendix N. If counsel conducted a reasonable investigation and determined that a factual basis underpinned the allegations of the complaint, then plaintiff's affidavit under Rule 56(f) lacks candor. If this is not the case, then plaintiff's Rule 11 affidavit is misleading. In either event, the request pursuant to Fed.R.Civ.P. 56(f) is denied and the Court will proceed to the merits of the summary judgment motion.

*Judicial Immunity*

■ A judge is immune from civil damage suits if he has not acted in clear absence of all jurisdiction and if the act was a judicial one. *Stump v. Sparkman,* 435 U.S. 349, 359, 98 S.Ct. 1099, 1106, 55 L.Ed.2d 331 (1978); *Martinez v. Winner,* 771 F.2d 424, 434 (10th Cir.1985). Immunity extends even to malicious or corrupt acts. *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 348, 20 L.Ed. 646 (1871).

■ The first question is whether the judge acted within his jurisdiction. *Stump v. Sparkman,* 435 U.S. at 356, 98 S.Ct. at 1104. A judge's jurisdiction extends to matters outside the courtroom. *Rheuark v. Shaw,* 628 F.2d 297, 304–05 (5th Cir.

1980), *cert. denied,* 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981). The general concern is whether the judge acted within the scope of his authority. *Forrester v. White,* 792 F.2d 647, 655–56 (7th Cir.1986). The threshold question is therefore whether Chief Judge O'Connor was authorized to discharge the plaintiff.

Federal statutes empowered Chief Judge O'Connor to remove probation officers serving in his district. Any court with original jurisdiction to try offenses against the United States may appoint probation officers, who serve under the direction of the court. 18 U.S.C. § 3654. The court may, in its discretion, remove a probation officer. *Id.* The discharge of the plaintiff was within the scope of Chief Judge O'Connor's authority.

■ The more difficult question is whether the dismissal was a judicial act. An act is judicial if it is a function normally performed by a judge and the parties dealt with the judge in his official capacity. *Stump v. Sparkman,* 435 U.S. at 362, 98 S.Ct. at 1107; *Martinez v. Winner,* 771 F.2d at 434. An administrative act may be a judicial act for purposes of immunity from liability for damages. *Martinez v. Winner,* 771 F.2d at 434.

■ In this case, the function was one normally performed by a judge, and the plaintiff's relationship was with the judge in his judicial capacity. Judges possess exclusive authority to remove probation officers. 18 U.S.C. § 3654. Plaintiff's dismissal was thus an act normally performed by a judge. Probation officers prepare presentence reports, assist in pretrial decisions, notify the court of advisable modifications in probation and of probation violations. In so acting, probation officers deal with judges in their judicial capacity. *Pruitt v. Kimbrough,* 665 F.2d 1049 (7th Cir.1981).

The rationale for judicial immunity supports this result. The purpose of judicial immunity is to free judges to make controversial decisions without fear of personal liability. *Stump v. Sparkman,* 435 U.S. at 364, 98 S.Ct. at 1108; *Pierson v. Ray,* 386

U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967). The federal courts, however, disagree on the question of whether immunity extends to decisions to discharge probation officers. *See Forrester v. White,* 792 F.2d 647 (7th Cir.1986) (judge immune from damage suit by former probation officer); *Abbott v. Thetford,* 534 F.2d 1101 (5th Cir.1976) (en banc) (judicial officer not liable in civil rights action challenging discharge of chief probation officer); *Blackwell v. Cook,* 570 F.Supp. 474 (N.D.Ind.1983) (judge absolutely immune in § 1983 action challenging dismissal of counselor in county probation office); *Pruitt v. Kimbrough,* 536 F.Supp. 764 (N.D.Ind.1982) (state judge immune from damages for dismissal of probation officer), *aff'd mem.,* 705 F.2d 462 (7th Cir.1983). *But see Laskowski v. Mears,* 600 F.Supp. 1568, 1573–74 (N.D.Ind.1985) (whether the relationship between a judge and a probation officer is dominated by acts taken in a judge's judicial capacity is a question of fact); *Atcherson v. Siebenmann,* 458 F.Supp. 526 (S.D.Iowa 1978) (judge acted in administrative rather than judicial capacity by requesting probation officer's resignation); *Shore v. Howard,* 414 F.Supp. 379 (N.D.Tex.1976) (state judge's dismissal of probation officer not a judicial act). Two unifying criteria, however, emerge from the cases: whether immunity will protect the integrity of the judicial process and whether the employee's duties intimately relate to the functioning of the judicial process. *Forrester v. White,* 792 F.2d at 654, 655.

The functions performed by probation officers are inextricably tied to the courts' discretionary decisions. Probation officers provide information crucial to the courts' sentencing and probation decisions. *Forrester v. White,* 792 F.2d at 657. When a judge retains an incompetent probation officer because of fear of litigation, the quality of the judge's information and decisions may decline. The judge might not be able to act on his convictions, because he lacks the aid of a probation officer in whom he has trust and confidence. *Id.* at 658. In addition, court personnel possess alternative remedies in the form of injunctive and declaratory relief. *See Pulliam v. Allen,* 466 U.S. 522, 541–42, 104 S.Ct. 1970, 1980–81, 80 L.Ed.2d 565 (1984). For these reasons, judicial immunity should be extended to Judge O'Connor and summary judgment should be granted in his favor.

 Quasi-judicial immunity similarly shields Chief Probation Officer Mathis. The sound operation of the judicial system requires that those closely associated with the system be afforded some immunity from monetary damages in civil actions. *Simons v. Bellinger,* 643 F.2d 774, 777 (D.C.Cir.1980). Federal probation officers are absolutely immune from civil damages where the challenged activity involves judicial functions. *Tripati v. United States Imm. and Nat. Serv.,* 784 F.2d 345, 348 (10th Cir.1986).

This immunity has generally been recognized when the probation officer is sued for performing some duty "intimately associated with the judicial phase of the criminal process." *See Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). In *Tripati,* for example, the plaintiff alleged that two probation officers made false statements in a pretrial bond report and a presentence report. *Tripati v. United States Imm. and Nat. Serv.,* 784 F.2d at 347. *See also Hughes v. Chesser,* 731 F.2d 1489 (11th Cir.1984) (probation officer allegedly falsified presentence report); *Spaulding v. Nielsen,* 599 F.2d 728, 729 (5th Cir.1979) (probation officer prepared erroneous presentence report); *Thompson v. Burke,* 556 F.2d 231 (3rd Cir.1977) (parole officer submitted allegedly false information leading to revocation of plaintiff's parole and subsequent denial of bail); *Burkes v. Callion,* 433 F.2d 318 (9th Cir.1970), *cert. denied,* 403 U.S. 908, 91 S.Ct. 2217, 29 L.Ed.2d 685 (1971) (probation officer allegedly falsified presentence report); *Crosby–Bey v. Jansson,* 586 F.Supp. 96 (D.C.D.C.1984) (probation officer prepared allegedly false and erroneous presentence report). In this case, however, Mathis is being sued not for preparing a false sentencing report, for example, but for supervising another probation officer.

Absolute immunity for judicial functions should extend no further than warranted. *Harlow v. Fitzgerald,* 457 U.S. 800, 811, 102 S.Ct. 2727, 2734, 73 L.Ed.2d 396 (1982); *Strothman v. Gefreh,* 739 F.2d 515, 520 (10th Cir.1984). Courts must weigh three factors in determining whether immunity should be granted. These include the "functional comparability" of the official's judgments to those of a judge, the nature of the controversy in which the official participated, and the adequacy of safeguards to control the unconstitutional conduct. *Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978).

The factors identified in *Butz* favor the defendants in this case. Federal probation officers serve under the direction of the district court. 18 U.S.C. § 3654. Appointing, supervising and removing probation officers is, as noted earlier, an integral part of a judge's sentencing decisions. When a federal court appoints more than one probation officer, however, "one [officer] may be designated chief probation officer and shall direct the work of all probation officers serving in such court." *Id.* By designating Mathis Chief Probation Officer, the court delegated to him the authority to supervise probation officers. Mathis' actions were therefore functionally comparable to those of a judge. The controversy touches matters of general public concern and is therefore similar to a controversy a court would decide. Bryant challenges Mathis' performance of a judicial function that is an integral part of the judicial process delegated to Mathis by the court. While acting in such a capacity, Mathis shares Chief Judge O'Connor's immunity.

Other safeguards reduce the need for private damage actions as a means of controlling unconstitutional conduct of this type. Bryant availed himself of the first of these by seeking a hearing before the judges of the district. Bryant received written notice of the reasons leading to his dismissal. He was permitted to examine all of the written materials and to respond in writing and orally to the charges against him in an evidentiary hearing at which he was represented by counsel. In addition, Bryant was protected by (and in fact used) the discrimination complaint procedures adopted by the United States District Court for the District of Kansas. All of the due process safeguards available to private litigants were afforded to Bryant. Under these circumstances, granting Mathis immunity will not open the door to the wholesale and unlawful termination of probation officers under his supervision.

■ Bryant contends that his prayer for "such other and additional relief as the Court may deem appropriate in law and equity" brings this case within the rule that judicial immunity does not shield judicial officers from injunctive relief. *See Pulliam v. Allen,* 466 U.S. at 541–42, 104 S.Ct. at 1980–81; *Martinez v. Winner,* 771 F.2d at 436. The Court doubts that invoking the phrase "equitable relief," absent a specific request for injunctive or declaratory relief, defeats summary judgment. Assuming *arguendo* that plaintiff properly stated a prayer for injunctive relief, summary judgment nevertheless must be granted to the defendants on the claims under §§ 1981 and 1985(2), (3). The Ku Klux Klan Act of 1871, of which §§ 1981 and 1985(2), (3) are a part, was not enacted to resolve personnel disputes within the federal government. *Santistevan v. Loveridge,* 732 F.2d 116, 118 (10th Cir.1984). Sections 1981 and 1985(2), and 1985(3) therefore do not supply a remedy on the facts of this case. Defendants' motion for summary judgment on plaintiff's claims under the Civil Rights Act of 1871 must be granted.

### Plaintiff's Implied Cause of Action

■ An implied cause of action under federal common law may exist even if the Civil Rights Act of 1871 does not afford a remedy. Absent special factors counseling hesitation, plaintiffs may invoke the general subject matter jurisdiction of the federal courts to remedy violations of their constitutional rights. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 396, 91 S.Ct. 1999, 2004, 29 L.Ed.2d 619 (1971).

Decisions in the aftermath of *Bivens,* however, leave no doubt that, where immunity of government officials is concerned, § 1983 and *Bivens* claims must be treated alike. No distinction is drawn for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials. *Butz v. Economou,* 438 U.S. at 504, 98 S.Ct. at 2909. A majority of courts hold that an official who is immune for purposes of § 1983 is also immune from an action for damages under *Bivens. Jorden v. National Guard Bureau,* 799 F.2d 99, 106 (3rd Cir.1986); *Charles v. Wade,* 665 F.2d 661, 666 (5th Cir.1982); *Briggs v. Goodwin,* 569 F.2d 10, 17 n. 8 (D.C.Cir.1977); *Bethea v. Reid,* 445 F.2d 1163, 1166 (3rd Cir.1971); *Dale v. Bartels,* 552 F.Supp. 1253 (S.D.N.Y.1982). Judicial immunity therefore shields the defendants from a *Bivens* action, and, for the reasons noted above, summary judgment must be granted in their favor.

*Title VII*

The first paragraph of Bryant's original complaint notes that Bryant "commenced proceedings to test whether Title VII applies, and if a right to sue letter is received *may* add such a count." (Emphasis supplied). Bryant received a right to sue letter, dated November 14, 1985, from the Equal Employment Opportunity Commission. Although Bryant did not amend his complaint to add this cause of action, he now asserts that this case may proceed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17.

■ Bryant's reliance on Title VII is misplaced. The Act applies only to "those units of the legislative and judicial branches of the Federal Government having positions in the competitive service." 42 U.S.C. § 2000e–16(a). Competitive service positions within the judicial branch consist of "civil service positions not in the executive branch which are specifically included in the competitive service by statute." 5 U.S.C. § 2102(a)(2). Probation officers are not specifically included in the competitive service by statute. To the contrary, appointment and removal of probation officers rests exclusively with the district courts of the United States. 18 U.S.C. § 3654. Probation officers are not within the competitive service, and thus Title VII does not apply. Bryant therefore lacks a cause of action under Title VII.

■ Finally, plaintiff's complete failure to respond to this Court's order with a meaningful discovery plan suggests that plaintiff lacked an evidentiary basis for the complaint when it was filed and hoped that discovery would reveal some set of facts supporting his allegations. Plaintiff failed to show this Court that he had any real facts at all on which to rely in support of the allegations of his complaint for which his counsel certified under Rule 11, Fed.R. Civ.P. that there was a factual basis. The Court must conclude that plaintiff's counsel improperly certified the complaint under Rule 11. Plaintiff failed to come forward with specific facts showing why summary judgment should be postponed pursuant to Fed.R.Civ.P. 56(f). Plaintiff utterly failed to place in issue facts demonstrating a legal right to relief. It is therefore

ORDERED that plaintiff's request pursuant to Fed.R.Civ.P. 56(f) be, and the same hereby is, denied. It is further

ORDERED that defendants' motion for summary judgment be, and the same hereby is, granted.