**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SUZANNE B. ZIELINSKI,
Plaintiff-Appellant,

v.                                                     No. 95-2160

UNITED STATES OF AMERICA,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson E. Legg, District Judge.
(CA-92-90-L)

Argued: March 6, 1996

Decided: June 6, 1996

Before ERVIN and MOTZ, Circuit Judges, and BUTZNER,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Henry E. Weil, BELLI, WEIL & GROZBEAN, P.C.,
Rockville, Maryland, for Appellant. Roann Nichols, Assistant United
States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:**
Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Suzanne Zielinski brought this suit against the United States pursuant to the Federal Tort Claims Act ("FTCA"). The district court granted judgment for the United States based on the discretionary function exception to the FTCA. Ms. Zielinski appeals. Finding no reversible error, we affirm.

I.

Ms. Zielinski was kidnapped from her home on the Naval Station in Guam. Her abductor, Kenneth Quenga Rappolla, gained entry to the base by presenting his Army Reserve identification card at the front gate. He then obtained a temporary decal pass for his vehicle from the Pass and Decal office on the base. After kidnapping and assaulting Ms. Zielinski, Rappolla drove her off the base where he further assaulted her. Rappolla was subsequently captured, tried, convicted, and imprisoned for his crimes.

Ms. Zielinski brought this suit against the United States, asserting that the government was negligent in failing to provide adequate security at the base. She alleged that this negligence permitted Rappolla, a person who had been specifically barred from the base, to gain access to the base and commit the assaults.

Prior to trial, both Ms. Zielinski and the United States moved for summary judgment. Ms. Zielinski based her motion on the FTCA and her evidence assertedly demonstrating the government's negligence; the government based its motion on the applicability of the discretionary function exception to the FTCA. The district court denied both motions but narrowed the issues for trial. The court held that the government's decisions regarding the extent of the security procedures necessary at the base fell within the discretionary function exception

2

to the FTCA. Nevertheless, the court concluded that Ms. Zielinski could still succeed on her claim if she could demonstrate that the base had, in fact, implemented security measures and "security personnel failed to carry out a task specifically required of them."

Noting a conflict in the evidence as to whether the base policy required security personnel to check all I.D. cards against the debarment list before permitting entry or merely to check non-military I.D. cards, the court held that a trial was required solely on this issue. The court ruled that if the actual policy required personnel to check only non-military I.D. cards against the list, the government would be entitled to judgment under the discretionary function exception; however, if the policy was to check all I.D. cards, Ms. Zielinski could proceed with her claim. The court then scheduled a non-jury trial on the issue of which policy was actually in effect on the base.

At the conclusion of this trial, the district court issued a memorandum opinion granting judgment to the government. The court found as a fact that the policy in effect at the time of the assault required security personnel to check only non-military I.D. cards against the debarment list. Therefore, security personnel had no mandatory duty to check military I.D. cards against the debarment list. Since Rappolla had a military I.D., the security personnel violated no mandatory duty in failing to check his name against the debarment list before issuing him the temporary pass. Instead, in permitting Rappolla access to the base, security personnel were performing a discretionary security function and therefore, even if they were negligent, the discretionary function exception applied. The district court concluded that "Ms. Zielinski has not satisfied her burden on the issues for trial," and awarded judgment in the government's favor.

II.

Ms. Zielinski appeals the court's decision on two grounds. She first maintains that the district court committed clear error in finding that the base did not have a mandatory policy for checking all I.D cards, including military I.D. cards, against a debarment list before permitting entry to the base.

There was conflicting testimony on the issue of the policy actually in effect. Ms. Zielinski offered extensive evidence, including deposi-

3

tion testimony from several individuals involved in checking I.D. cards -- testimony which indicated that those individuals believed the policy in effect was to check all I.D. cards. She also relied on a written "policy," of unknown origin or vintage, which stated that security personnel were to check all I.D. cards against the debarment list before issuing temporary passes. In opposition, the government offered the testimony of Captain Marchetti, the base commander ultimately responsible for security at the base. Captain Marchetti testified that the security procedure in effect at the base was to check only civilian I.D. cards against the debarment list, not military I.D. cards. This was in part, Captain Marchetti testified, because the military takes care of its own problems and, therefore, it was only necessary to check civilian I.D. cards. After considering this evidence, the district court found as a fact that the security procedure in effect at the base did not require security personnel to check all I.D. cards against the debarment list, but only non-military I.D. cards. Accordingly, the court ruled that security personnel had not violated any mandatory requirements when they failed to check Rappolla's Army Reserve I.D. against the debarment list and, thus, the discretionary exception applied.

Ms. Zielinski asserts that this finding was clearly erroneous. The district court listened to the testimony of the base commander and found him to have "excellent and precise recall" of the security procedures in effect, while finding Ms. Zielinski's evidence less convincing. This court does not assess the evidence by counting witnesses for or against each side and independently assessing credibility. The district court observed Captain Marchetti testify first-hand and its credibility assessment is entitled to deference. "Factual findings are not clearly erroneous if the record contains sufficient evidence to support them." Agathos v. Starlite Motel, 977 F.2d 1500, 1504 (3d Cir. 1992). The base commanders' testimony provided sufficient evidence to support the district court's factual finding that the actual policy in effect was to check only non-military I.D. cards. Accordingly, we cannot conclude that the district court's finding was clearly erroneous.

Ms. Zielinski asserts that the court's finding cannot stand because the court erroneously placed the burden on her of establishing the actual base policy in effect. This error, she contends, is indicated by

4

language in the court's opinion in which it stated that she had not "satisfied her burden on the issues for trial."

Although this statement as to "burden" is somewhat ambiguous, nothing in the record indicates that the court placed the evidentiary burden on Ms. Zielinski. Rather, it appears that the court meant that Ms. Zielinski had not carried her burden to point out a mandatory restriction that "cabined" the discretion of security personnel within their more broad discretion regarding base security. This was necessary to rebut the government's initial showing that it was entitled to judgment under the discretionary function exception.

We agree with Ms. Zielinski that normally the burden is on the government to prove that the discretionary function exception applies. See, e.g., Valdez v. United States, 56 F.3d 1177, 1179 (9th Cir. 1995). But in this case, the district court initially found that the government had carried its burden by showing that decisions as to necessary security procedures at the base fell under the exception. The district court then correctly noted that the only way Ms. Zielinski could succeed in her claim was if the base had enacted mandatory procedures within that discretion. Because the government denied that a mandatory checking procedure existed, the burden necessarily shifted to Ms. Zielinski at least to point out the mandatory security procedures that the government allegedly violated. Cf. Daigle v. Shell Oil Co., 972 F.2d 1527, 1539-40 (10th Cir. 1992) (finding it insufficient for the plaintiff to merely allege that the government violated a mandatory regulation, plaintiff must point the court to the allegedly violated mandatory regulation); Creek Nation Indian Hous. Auth. v. United States, 905 F.2d 312, 314 (10th Cir. 1990) (same). Cf. also United States v. Gaubert, 499 U.S. 315, 329 (1991) (noting that neither party had identified for review any formal regulations). Accordingly, in the somewhat unusual procedural context of this case, the district court did not err in concluding that Ms. Zielinski could not carry her burden to rebut the government's initial showing that its conduct fell within the discretionary function exception.

III.

Ms. Zielinski's second argument on appeal is that, even if the district court's finding that the policy was to check only non-military

5

I.D. cards is accepted, the government was still not entitled to judgment. She asserts that the district court erred in "failing to determine whether the procedure adopted to implement the official safety policy involved an element of choice and whether such choice was grounded in social, economic, or political policy."

The district court's initial conclusion, that the extent and manner of base security measures in general fell within the discretionary function exception, is well-supported by the case law. See Goldstar (Panama) S.A. v. United States, 967 F.2d 965, 970 (4th Cir.) (discretionary function exception applies to government's decision regarding security measures necessary to protect Panamanian businesses in wake of U.S. occupation), cert. denied, 506 U.S. 955 (1992); Attallah v. United States, 955 F.2d 776, 785-86 (1st Cir. 1992) (exception applies to Customs Service policy and procedures for providing security to passengers); Haygan v. United States, 627 F. Supp. 749, 750-51 (D.D.C. 1986) (exception applies to security precautions at a parking lot); Marbley v. United States, 620 F. Supp. 811, 813 (D.D.C. 1985) (exception applies to security measures taken at Washington Navy Yard). Accordingly, the district court did not err in concluding that Ms. Zielinski could rebut the government's entitlement to judgment only by showing that within its broad discretion regarding security, the government had implemented mandatory security procedures.

In attempting to meet this burden at trial, Ms. Zielinski pointed only to the alleged policy for checking all I.D. cards against the list as the mandatory policy implemented within the government's broader security discretion. As indicated within, the district court found as a fact that this was not the policy in effect and we have concluded that this finding was not clearly erroneous. Perhaps in view of the small likelihood of reversal of the district court's factual finding on appeal, Ms. Zielinski makes a second argument. In direct contradiction to the district court's ruling prior to trial that the government would be entitled to judgment if the court found that no mandatory policy existed for checking all I.D. cards against the list, she contends that she can still establish the government's liability in the face of such a finding. She now maintains that the "debarment list" itself is the mandatory policy "cabining" security personnel's discretion, and that the failure to implement properly that mandatory policy did not

6

involve a policy choice based on economic, social, or political considerations.

Because it is not clear that she ever raised this specific argument before the district court, arguably it is not properly before us on appeal. See e.g., United States v. Banisadr Bldg. Joint Venture, 65 F.3d 374, 379 (4th Cir. 1995); Agra, Gill & Duffus, Inc. v. Benson, 920 F.2d 1173, 1176 (4th Cir. 1990). Regardless, even if the argument had been preserved for appeal, we would have to reject it as meritless. The manner in which the government chose to keep debarred persons from the base involved discretionary decisions based on social, economic and political considerations. In our review, we do not look to whether the government actually balanced these assorted considerations, but whether the government's decision was of a type that is typically grounded in such considerations. See Baum v. United States, 986 F.2d 716, 720-21 (4th Cir. 1993). There are numerous ways the base commander could have effectuated the policy of keeping debarred persons from the base. Security procedures could involve checking all persons at the gate, employing a roving patrol to check I.D. cards, simply escorting debarred persons from the base whenever they were found on the base, or checking only non-military I.D. cards at the gate.

These security decisions are grounded in economic, social and political considerations. Among the factors military commanders should consider are the resources and manpower necessary to check I.D. cards (see Baum, 986 F.2d at 724); the impact of the security measures on the functioning of the base (for example, in this case there was testimony that not all I.D. cards were checked at the gate because this caused extensive back-ups and delays); the impact of security measures on the general base atmosphere and local sensibilities; and other distinctly military concerns (take, for example, Captain Marchetti's comment that the military takes care of its own disciplinary problems). Contrast Noel v. United States , 893 F. Supp. 1410, 1420-21 (N.D. Cal. 1995) (discretionary function exception does not apply where government decision is motivated solely by safety considerations similar to those facing private individuals).

Indeed, due to financial constraints, Captain Marchetti testified that the Naval Station on Guam at present is an "open base" with free

7

access to all persons. If the "debarred list" still exists, security personnel no longer make any effort to stop those persons at the gate or the Pass and Decal office. Additionally, it should be noted that the letter informing Rappolla that he was barred from the base did not state that he would be stopped from entering the base, but that he would be punished if found on the base. The decision whether to open or close a base, or to what extent the base should be open or closed, is a decision within the commander's discretion. Moreover, the base commander's decision as to how to keep debarred persons from the base involves an exercise of discretion grounded in policy concerns.

IV.

No one denigrates the tragedy Ms. Zielinski has suffered. Unfortunately, it is not one for which there is any remedy against the United States. Accordingly, the district court's decision dismissing this case for lack of subject matter jurisdiction is

AFFIRMED.