**Dana Lynn FANOELE, Plaintiff,**

v.

**UNITED STATES of America and General Security Services Corporation, Defendants.**

**Civil Action No. 95–2211–GTV.**

United States District Court, D. Kansas.

Aug. 15, 1997.

**1396**

Steven J. Borel, Amy L. Coopman, Borel & Associates, Kansas City, MO, Aldo P. Caller, Shawnee Mission, KS, for Dana Lynn Fanoele.

Janice M. Karlin, Office of U.S. Atty., Kansas City, MO, for U.S.

Thomas E. Rice, Jr., Thomas N. Sterchi, Baker, Sterchi, Cowden & Rice, L.L.C., Kansas City, MO, Gretchen E. Schmidt, Truman Medical Center, Kansas City, MO, for General Security Services Corp.

Thomas L. Theis, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, KS, Michael L. Bennett, Law Offices of Daniel P.

Hanson, Overland Park, KS, for St. Francis Hospital & Medical Center, Inc.

### MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

Plaintiff brings this action against the United States[1] under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) and § 2671 et seq. Before the court are the following:

(1) Defendant United States' motion (Doc. 223) to dismiss pursuant to Fed. R.Civ.P. 12(b)(1), or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 12(b)(6);

(2) Plaintiff's motion (Doc. 227) for partial summary judgment pursuant to Fed. R.Civ.P. 56(a); and

(3) Defendant United States' Motion (Doc. 174) to designate Kansas City, Kansas as place of trial.

The basis for the government's motion pursuant to Rule 12(b)(1) is that the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), deprives the court of subject matter jurisdiction. In arguing for summary judgment, plaintiff contends that the discretionary function exception does not apply in this action because both the General Services Administration ("GSA") and the United States Marshal's Service violated mandatory directives for providing security at the Frank Carlson Federal Building ("Federal Building") in Topeka, Kansas.[2]

The parties have briefed the issues in each of the above listed motions and the court is prepared to rule. For the reasons set forth below, (1) the government's motion for summary judgment is granted; (2) plaintiff's motion for partial summary judgment is denied as moot; and (3) the government's motion to designate Kansas City, Kansas as place of trial is denied as moot.

---

**1.** On April 2, 1997, the court entered its order granting the parties' joint motion stipulating to the dismissal with prejudice of General Security Services Corp. The United States is the sole remaining defendant in this action.

**2.** Although plaintiff's amended complaint contains numerous allegations criticizing the actions

of various federal agencies, she named only two agencies in her administrative tort claim: the GSA and the Marshal's Service. Because plaintiff has exhausted her administrative remedies against only those agencies, she can state a claim against only those agencies. See 28 U.S.C. § 2675(a).

## I. LEGAL STANDARDS

■ A party seeking to invoke the jurisdiction of a federal court must demonstrate that the case rests within the court's jurisdiction. *United States v. Bustillos*, 31 F.3d 931, 933 (10th Cir.1994). The burden of proof on this issue depends upon the procedure used to resolve the matter. *See FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992).

■ The government's motion to dismiss for lack of subject matter jurisdiction attacks the facial validity of plaintiff's complaint. Ordinarily, the court would analyze such a motion under Rule 12(b)(1). "However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.1995). A jurisdictional question is considered intertwined with the merits of the case if the court's subject matter jurisdiction is dependent upon the same statute that provides the substantive claim in the case. *Id.*

■ In the instant action, the government contends that explicit provisions contained in the FTCA preclude the court from entertaining plaintiff's claims. Because plaintiff predicates her suit on the FTCA, the jurisdictional question before the court is intertwined with the merits of the case. *See Tippett v. United States*, 108 F.3d 1194, 1196 (10th Cir.1997). In deciding the government's motion, the court has considered documents outside the pleadings. Because both parties have complied with the requirements of D. Kan. Rule 56.1, the court will analyze the motion pursuant to Fed.R.Civ.P. 56. *See Bryant v. O'Connor*, 671 F.Supp. 1279, 1282 (D.Kan.1986) ("Failure to comply with [D. Kan. Rule 56.1] justifies denying a motion for summary judgment.").

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must examine the factual record and reasonable inferences therefrom in a light most favorable to the party who opposes summary judgment. *Applied Genetics Int'l Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990).

## II. UNCONTROVERTED FACTS

Plaintiff's claims arise out of an incident that occurred on August 5, 1993, at the Clerk of the United States District Court's office in the Federal Building at Topeka, Kansas. On that date, Judge Sam Crow was to sentence Jack McKnight, who previously had pled guilty to several marijuana offenses and was free on bond.

McKnight entered the Federal Building on the morning of August 5, 1993, approximately five hours before his scheduled sentencing. McKnight exited the fourth floor elevator in the Federal Building carrying a weapon in one hand and a briefcase in the other. Upon exiting the elevator, McKnight fired the weapon, fatally wounding a court security officer and severely wounding a courthouse visitor. McKnight proceeded into the Clerk of the District Court's office and shot several persons, including plaintiff. Plaintiff was shot in the face and suffered permanent injury to her right eye.

Plaintiff alleges that the government was negligent in failing to provide adequate security at the Federal Building to protect her from being shot. Although the parties provide voluminous factual detail concerning the events surrounding McKnight's rampage and the security presence at the Federal Building on that day, it is not necessary for the court to set forth those facts. The threshold issue in the instant motions is whether the GSA or Marshal's Service were under mandatory directives to provide specific and defined security protection at the Federal Building. The court will set forth, as needed, the necessary facts on that issue.

## III. DISCUSSION

■ Plaintiff claims that government employees caused her injuries. The FTCA generally "waives the sovereign immunity of

the government with respect to certain claims for personal injuries caused by government employees." *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1537 (10th Cir.1992); *see also* 28 U.S.C. § 1346(b). However, Congress explicitly limited the waiver of sovereign immunity by the discretionary function exception, which excepts claims that are "based upon the exercise of performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Basically, the discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). Consequently, application of the discretionary function exception presents a threshold jurisdictional determination "a jurisdictional issue which precedes any negligence analysis." *Johnson v. United States*, 949 F.2d 332, 335 (10th Cir.1991); *accord Domme v. United States*, 61 F.3d 787, 789 (10th Cir.1995) ("Only if the United States waives its sovereign immunity pursuant to the FTCA does the question of whether the government owed the plaintiffs a duty of care under state law arise.").

■■ The Supreme Court has developed a two-pronged test to determine whether particular government conduct falls within the discretionary function exception. *See, e.g., United States v. Gaubert*, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). Under the first prong, the court must determine whether the official's conduct involved "an element of judgment or choice." *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1959. The court's inquiry focuses on the existence of a "specific and mandatory regulation, statute or policy" that "requires a particular course of action." *Daigle*, 972 F.2d at 1538 (citing *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1959). If such a regulation, statute, or policy exists, no judgment or choice is implicated and the

discretionary function exception does not apply. *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1959. On the other hand, if such a directive does not control the government's conduct, the court must proceed to the second prong of the analysis.

■■ Under the second prong, the court must consider whether the judgment involved "is of the kind that the discretionary function was designed to shield." *Id.* 536, 108 S.Ct. at 1959. The discretionary function exception protects "governmental actions and decisions based on considerations of public policy." *Id.* (exception grounded in "Congress' desire to prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort").

■■ If the court finds, following the application of the two-pronged analysis, that the government official is performing a discretionary function, the exception to the FTCA applies, regardless of whether the discretion involved is abused. *See Redmon v. United States*, 934 F.2d 1151, 1157 (10th Cir.1991). Consequently, the court's sole inquiry is whether plaintiff has plead sufficient facts to demonstrate a clear waiver of sovereign immunity to overcome the discretionary function exception. *See Gaubert*, 499 U.S. at 324, 111 S.Ct. at 1274–75.

**A. Mandatory Directive**

■■ Under the first prong, the parties agree that the GSA is responsible for providing reasonable security protection at federal buildings to ensure that occupants and visitors "are not exposed to unnecessary risks." 41 C.F.R. § 101–20.002–1(b) (1996); *see also id.* at § 101–20.002–1(d). Those general guidelines, however, do not impose a specific course of conduct on the GSA regarding security at a federal building. Instead, under those guidelines, security decisions are left to the discretion of the person responsible for security protection at each federal building in accordance with regulations established by the Commissioner of the Public Buildings Service, an arm of GSA. As the court noted above, only if a "specific and mandatory reg-

ulation, statute or policy requires a particular course of action" will a government employee's conduct not fall within the discretionary function exception. *Daigle,* 972 F.2d at 1538 (citing *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1959).

Plaintiff claims that the discretionary function does not apply because the GSA and Marshal's Service officials violated numerous mandatory directives for the requisite security protection necessary at the Federal Building. Plaintiff asserts that the Commissioner of the Public Buildings Service and others set forth those directives in regulatory and/or policy manuals. The court finds plaintiff's argument unpersuasive.

Plaintiff relies mainly on the GSA handbook, Facilities Standards for the Public Buildings Service ("Facilities Standards"), PBS/PQ–100, which contains various requirements and policies that the GSA promulgated for new and renovated federal buildings. This was the handbook in effect at the time plaintiff was injured. Chapter fourteen of the handbook details the physical security requirements for federal government owned or operated buildings. Specifically, plaintiff asserts that Part 2.7.b. of that chapter contains the mandatory directive requiring the GSA to provide a security guard at all public entrances of the Federal Building to check the identification of all visitors. That section provides:

> *Mixed facilities.* In some cases, courthouses may be mixed with office buildings. The mixed facility will be designated as Category II. Security guard shall check identification documents (ID) in the lobby and issue passes to visitors; visitors need not be escorted. A second access control point *shall* be provided at the entrance to Category II spaces at which point access procedures shall be those for Category II. Emergency exit doors will be exit-only with motion detectors and panic-bar hardware opening the doors from inside only.

(emphasis added). Plaintiff also relies on Part 5.19.a.(2) of chapter fourteen, which provides:

> Category I and II buildings shall have the following minimal, or base level, access control system:

. . .

> (2) Entry Control. A uniformed guard *shall* be placed at all public building entrances to check for valid ID's and to process visitors.

(emphasis added).

Plaintiff asserts that the plain language of the above-cited provisions evidences their mandatory nature. By using the word "shall" to describe the required security procedures at government buildings, plaintiff contends that the drafters of the provisions eliminated the government's discretion in designing security precautions for the building. Based on the alleged mandatory language, plaintiff maintains that the government was required to have guards posted at all public entrances to the Federal Building and that the guards were to check visitor identification and issue passes. Plaintiff further argues that the government's failure to adhere to the mandatory security directives caused her injuries.

The government argues that the Facilities Standards is not a handbook designed for the purpose of establishing mandatory security requirements for federal buildings. Rather, the government contends that the handbook was intended to provide architects and engineers with guidance in the design or renovation of federal buildings. The court agrees.

Chapter one of the handbook provides that the purpose of the Facilities Standards is to:

> set forth design guidelines and criteria for new buildings and renovations for the Public Buildings Service of the General Services Administration (GSA). This document contains policy guidelines and technical criteria to be used in the programming and design of GSA buildings. It is intended to be a design guide; it is not a textbook, training manual or substitute for technical competence expected of a professional in design and contraction.... The detailed guidelines and requirements stated in this manual are the result of experience from many GSA projects. Nonetheless, it is understood that each project is unique and that general criteria cannot cover every situation.

The introduction to chapter fourteen, dealing with physical security, provides:

> Physical security systems shall be provided at GSA facilities to protect against burglary, theft, sabotage, espionage, and attack. Such protection shall be acquired through architectural · design considerations augmented, as appropriate, by detection and access control systems.... The philosophy of physical security is to increase the time required to gain unauthorized access by providing one or more layers of protection, a design approach known as the "onion" concept. The architect-engineer (A/E) shall design a facility using architectural and other methods to maximize delay time in a cost-effective, functional, and aesthetic manner.

Additionally, paragraph four of Appendix 14–G to the Facilities Standards, which covers approaches to risk reduction, provides:

> The most common physical security problem in Government-owned multi-tenant buildings is the diversity of physical security needs. Since the building may have a mixture of risk categories, and some tenant turnover, the perimeter security protection shall be at a level that would meet the needs of the highest risk category occupying the building ...

The court agrees with plaintiff that the provisions in the Facilities Standards handbook should be given a plain-language interpretation. However, plaintiff cannot pick and choose provisions in isolation to achieve a mandatory security directive; the provisions must be viewed as a whole. By its very language, the handbook's security provisions instruct architects and engineers on design parameter mandates that must be included in planning specifications for new or renovated federal buildings. Moreover, the language in the handbook cannot be construed as a security directive concerning the scope of protection mandated at federal buildings. As the language in Appendix 14–G illustrates, because a federal building may have a mixture of risk categories, the appropriate level of security protection is left to the judgment of the government official responsible for establishing security in a particular location, which is a discretionary function.

Plaintiff advances several other policies and regulations that she contends contain mandatory directives for security protection, including: (1) a 1987 memorandum of agreement between the Marshal's Service and GSA that provided for the division of security responsibilities in buildings housing the federal judiciary; (2) a federal regulation, 41 C.F.R. § 101–20.103–1(b), that requires installed perimeter security devices and systems to be monitored; (3) the Occupant Emergency Plan that sets forth various procedures for handling emergency situations that might arise in a federal building; (4) the adopted standards of the Committee on Court and Judicial Security, which recommends security staffing levels for screening positions at federal courthouses; and (5) the United States Marshal Service Manual, that provides for security committee meetings and written security plans.

The. court need not detail the language contained in each of the above-mentioned regulations or policies. In each instance, the policies, regulations, or plans are not the panacea of mandatory directives the plaintiff claims. Rather, they contain discretionary language regarding the implementation of certain security provisions. None of the manuals or directives that plaintiff cites require the GSA or Marshal's Service to pursue any specific course of action. The materials simply contain definitions, general guidelines, and broad objectives for providing security protection. Additionally, the materials are highlighted by language of a predominantly precatory nature, implicitly and explicitly vesting the GSA and Marshal's Service officials with wide discretion in determining how to proceed in providing security precautions. Provisions from the above-mentioned regulations or policies requiring that the GSA or Marshal's Service employees "[p]rovid[e] building perimeter protection for the tenants in GSA-controlled buildings," establish and coordinate a court security committee, or function as a fire marshal hardly constitute the type of "specifically prescribed courses of action" necessary to invoke the court's jurisdiction under the FTCA.

Additionally, the vast majority of plaintiff's allegations stem from claims that GSA and

Marshal's Service employees failed to provide proper security at the Federal Building. It is irrelevant to a discretionary function determination whether government officials were negligent or abused their discretion in security precaution efforts. *Daigle,* 972 F.2d at 1540. Instead, the proper inquiry is whether the government's "short-comings involved violations of specific mandatory directives." *Id.* The provisions that plaintiff cites do not equal such specific and mandatory directives. Consequently, the court concludes that the actions of the GSA and Marshal's Service involved elements of choice and judgment.

**B. Policy Considerations**

■ The court now must examine whether the discretionary function exception shields the type of judgment and choice that the GSA and Marshal's Service officials used in making security protection plans for the Federal Building. Decisions involving the scope of security protection at federal buildings generally "are grounded in economic, social, and political considerations." *Zielinski v. United States,* No. 95–2160, 1996 WL 329492, at *16 (4th Cir. June 6, 1996); *see, e.g., Hughes v. United States,* 110 F.3d 765, 768 (11th Cir.1997) ("Decisions involving security at post offices are a fundamental part of the economic and social policy analysis required to achieve these goals."). Moreover, as the *Hughes* court noted, the inquiry is not whether government officials actually weighed policy considerations in determining the appropriate level of security protection. 110 F.3d at 768. "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert,* 499 U.S. at 324, 111 S.Ct. at 1274.

In the instant action, the GSA and Marshal's Service employees had to determine the best way to allocate limited resources to best serve the tenants of and visitors to public federal buildings. In the case of the GSA, it is directed to "make every effort to provide or arrange for a reasonable amount of protective services to ensure the physical security of occupants and visitors, to safeguard the Government's property interests, and to maintain order." 41 C.F.R. § 101–20.002–1(d). The GSA's actions while serving as landlord of the Federal Building were related directly to public policy considerations regarding federal oversight of government buildings. Indeed, the nature of and inherent discretion underlying the decisions of the GSA and Marshal's Service are what drove Congress to enact the discretionary function exception in the first place. *See Dalehite v. United States,* 346 U.S. 15, 26–30, 73 S.Ct. 956, 963–65, 97 L.Ed. 1427 (1953) (describing legislative history of 28 U.S.C. § 2680(a)). The court, therefore, concludes that both prongs of the discretionary function test have been met and the government is insulated from liability on plaintiff's FTCA claims. Because the court lacks subject matter jurisdiction over plaintiff's claims under the FTCA, the government is entitled to summary judgment.

IT IS, THEREFORE, BY THE COURT ORDERED that the motion (Doc. 223) of the United States for summary judgment is granted.

IT IS FURTHER ORDERED that plaintiff's motion (Doc. 227) for partial summary judgment is denied as moot.

IT IS FURTHER ORDERED that the motion (Doc. 174) of the United States to designate Kansas City, Kansas as place of trial is denied as moot.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**